**Donna L. DRAGON, Plaintiff, Appellant,**

v.

**STATE OF RHODE ISLAND, DEPARTMENT OF MENTAL HEALTH, RETARDATION & HOSPITALS, Defendant, Appellee.**

**No. 90–2218.**

United States Court of Appeals, First Circuit.

Heard April 5, 1991.

Decided June 19, 1991.

Robert B. Mann with whom Mann & Mitchell was on brief, Providence, R.I., for plaintiff, appellant.

Ellen Evans Alexander, Sp. Asst. Atty. Gen., with whom James E. O'Neil, Atty. Gen., was on brief, Providence, R.I., for defendant, appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

Donna Dragon, the appellant, claims that the Rhode Island Department of Mental Health Retardation and Hospitals (MHRH) unlawfully discriminated against her on the basis of sex when it 1) failed to promote her and 2) failed to raise her pay. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). After hearing all the evidence, the district court granted MHRH's motion for a directed verdict on Ms. Dragon's Title VII claims, and entered a judgment in its favor. Ms. Dragon now appeals. We have read the record in its entirety and we conclude that no reasonable person, judge or juror, could find, on the basis of that record, that MHRH discriminated against Ms. Dragon on the basis of sex. We therefore affirm the district court's determination.

■ The evidence in the case consisted of the testimony of Ms. Dragon, the testimony of her supervisor Robert Plante (the Assistant Director for Human Resource Management), and several documents. For the most part the witnesses and the documents agree about the key facts, which include the following:

1) Before she came to MHRH in 1982, Ms. Dragon worked as a secretary, first for a private firm, then for the state Public Utilities Commission.

2) Between 1982 and 1985 Ms. Dragon worked at MHRH as a clerk typist (civil service grade 9), for Henry Johnson, the agency's Equal Employment Opportunity Officer. Mr. Johnson's job included counseling, investigating formal and informal complaints, organizing training programs, running an Equal Opportunity Committee, advising other staff about equal opportunity procedures, and explaining relevant rules and regulations to other members of the agency.

3) In January 1985 Mr. Johnson left the agency. Shortly thereafter a new governor "froze" funding for the Equal Employment Opportunity Officer position at MHRH (as well as many other positions in the state government). MHRH received "direct orders" not to fill the position. MHRH tried to convince relevant officials outside the agency to permit it to fill the position, but they repeatedly refused to do so. (On one occasion, however, the Governor's office, without committing itself to funding, requested MHRH to interview a particular woman for the job; MHRH did so, but she was not offered the position.)

4) Mr. Plante, now lacking an Equal Employment Opportunity Officer, assumed some of the Officer's duties himself, asked Ms. Dragon to assume many others, and divided the remainder among other workers at the agency. The parties disagree about just how many, and which, of those duties Ms. Dragon assumed. She concedes that she did not assume all of them (she estimates about 70%), but she adds that the job grew in complexity, so, in fact, she was working harder at the "equal employment opportunity" job than Mr. Johnson had ever done. Mr. Plante concedes that she assumed many "equal employment opportunity" duties, but he says she overstates the importance of what she did and that other people (including Plante himself) performed many other of Mr. Johnson's previous duties (such as appearing at contested hearings outside the agency and making various significant equal employment opportunity policy decisions).

5) Mr. Plante recognized that Ms. Dragon was performing far more than a clerk typist's duties, and he helped her fill out a civil service form aimed at securing for her the position of Equal Employment Opportunity Officer. Although he did not succeed in that enterprise, he did (in 1986) obtain for her a promotion of eight civil service levels, from level 9 to level 17 (personnel aide). Ms. Dragon was subsequently promoted to level 19, at which point she earned only about $3100 less than an Equal Opportunity Officer (at level 23) would have earned.

6) In 1989 Ms. Dragon left MHRH to become a human services business officer at the Rhode Island Department of Human Services. As far as the record is concerned, MHRH still lacks the power to appoint an Equal Employment Opportunity Officer.

We could find nothing else in the record that could help Ms. Dragon with her claim, with two conceivable exceptions. First, at one point, Ms. Dragon herself testified as follows:

Q. Did he [Mr. Plante] say anything to you [in 1989 when you left the agency]?
A. No. I—he asked me, he said, first of all, if they were going to refill the position, that when I had left, if the position was going to be refilled, and he asked me if I knew of—well, he was just making a joke, or a comment, that if I knew of anybody that wanted to take over the position, another bubbly blond or nice blond.

The significance of this comment is considerably diminished, not necessarily by Mr. Plante's irate denial ("I've never been con-

descending to a woman at MHRH"), but, more importantly, by Ms. Dragon's own response to her counsel's questions. Her response suggests that (with the possible exception of the "bubbly blond" remark), after working with Mr. Plante for seven years, she could think of nothing that showed either hostility or condescension towards women:

Q. Did he ever make any comments to you, or say anything to you that was of particular note from your perspective as a woman?

A. Well, Bob had a temper. He used to swear and be very intimidating at times.

. . . .

Q. Did he call women any names?

A. No. He just would—swear a lot, you know. No.

Ms. Dragon added that she had a "good" working relationship with Mr. Plante, that he "was a good boss, good leader," and made numerous other positive comments about him. Thus, the remark about a "bubbly blond," is isolated and of next to no probative value—a swallow that simply does not make a summer.

Second, the record would permit a jury to conclude, contrary to the natural implication of Mr. Plante's efforts to help Ms. Dragon fill out the civil service job classification form, that Mr. Plante might not have promoted Ms. Dragon to the equal opportunity position, had the position been available. He pointed out that, in a competitive examination for equal opportunity officer, she finished 48th, he indicated that the agency probably would have had to give the job (had it been available) to one of the top eighteen persons (willing to accept it), and he suggested that Ms. Dragon, in his view, might not have been the best person to carry out such an official's policy-making responsibilities. This testimony, in context, however, does not cast doubt on Mr. Plante's basic testimony about the unavailability of the position (which Ms. Dragon's own testimony tended to corroborate), nor does it suggest (say, through some internal inconsistency) any hidden, sex-based motive. Rather, it simply says that Mr. Plante was not totally certain (for plau-

sible, non-sex-related reasons) whether Ms. Dragon would have received the job even if it had been available.

We can find nothing else in the record that would help Ms. Dragon. She does not claim that statistics suggest the MHRH discriminated (in promotion or pay) against women as a class. She does not suggest her level 19 position is one in which women typically are forced to do the same work as men normally do at higher grades for higher pay. To the contrary, her testimony concedes and corroborates that her extra work reflected a special circumstance, namely that MHRH was trying to continue to carry on equal employment opportunity tasks without being able to hire an Equal Employment Opportunity Officer. The only contrary indications in the record lie in the questions posed to Mr. Plante by Ms. Dragon's counsel. But counsel's questions, of course, are not evidence. *See* Wright & Miller, *Federal Practice and Procedure* § 2528 (1971) (A party "does not make an issue for the jury by relying on the hope that the jury will not trust the credibility of the witnesses. . . . There must be some affirmative evidence. . . ."); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

For these reasons, after reading the record, we are convinced that it could not reasonably persuade *anyone* that MHRH discriminated against Ms. Dragon on the basis of sex. Mr. Plante's (undisputed and often corroborated) testimony shows that MHRH failed to promote Ms. Dragon to the level 23 position of Equal Employment Opportunity Officer, not because of her sex, but because it had no such position to fill. Indeed, Ms. Dragon herself testified that Mr. Plante made considerable efforts to help her get the Equal Employment Opportunity job and that she was told the reason she did not get it was that the position was not available. The record shows without dispute that MHRH failed to pay Ms. Dragon as much as Mr. Johnson

had been paid, not because she was a woman, but because she held a lower civil service grade; and she held that lower grade, not because she was a woman, but because relevant officials (outside of MHRH) would not permit MHRH to hire *anyone* to fill the Equal Employment Opportunity Officer position, male or female. There is no claim here that the lower civil service classification itself reflected some intentional, or even unintended historical, discrimination against women generally or against Donna Dragon particularly. All this being so, the law does not permit a finding of sex discrimination. *See, e.g., Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 153 (1st Cir.1990) (Title VII requires a showing "that the defendant discriminated against [the plaintiff] for a proscribed reason").

Ms. Dragon makes two basic arguments to the contrary. First, she says that she made out what the case law refers to as a "prima facie" case of Title VII sex discrimination. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256–58, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). She showed 1) that she is a woman (*i.e.* in a protected class), 2) that she was qualified for the equal opportunity job, and 3) that she did not receive the job. She concedes that normally she would also have to show that the "employer sought someone" else for the job. *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 899 (1st Cir.1988). She notes that in *Cumpiano,* 902 F.2d 148, we described this last mentioned requirement as "showing that ... the employer had a continued need for 'someone to perform the same work after [the complainant] left,' " *id.* at 155, which showing, she says, she plainly made. Given her "prima facie" case, she adds, the law required the district court to send her case to the jury.

The problem with this argument lies in its conclusion. A judge, in deciding whether to send a case to a jury after a trial is complete must look at *all* the evidence submitted, that which favors the defendant as well as the plaintiff. If the record, as a whole, permits only one reasonable conclusion, the judge must enter a directed verdict. *See, e.g., Lubanski v. Coleco Industries, Inc.,* 929 F.2d 42, 48 (1st Cir.1991). A prima facie case will permit a plaintiff to reach a jury in the absence of evidence supporting the defendant, or where the jury might disbelieve that latter evidence, or where that evidence is not strong enough to *compel* a verdict for the defense. Thus, the anti-discrimination "burden of proof" rules may help a court decide what to do when the evidence consists *only* of the four "prima facie" factors, *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094, or when the evidence is in "equipoise." *See Fallon v. State of Illinois,* 882 F.2d 1206, 1217 (7th Cir.1989). But, in the case where both sides submit evidence, and the evidence, taken as a whole, is so strong that (in a jury case) no reasonable person could find for plaintiff, the "prima facie" case rules pose no obstacle to a judge requiring a finding for the defense. *See United States Postal Serv. Bd. of Govs. v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the [defendant intentionally discriminated]."); *cf. Cumpiano,* 902 F.2d at 155 ("the critical determination in any Title VII suit is whether the complainant has proven by a fair preponderance [the existence of intentional discrimination].... That principle requires [the court] to focus not on the artificial striations of the burden-shifting framework, but on [the ultimate issue of discrimination]").

In this case we have concluded, in the presence of a great deal of evidence, which is definitely not in equipoise, that no reasonable factfinder could find that gender played a role in MHRH's decision. We do not see how any reasonable juror (given the corroboration of the basic facts found in the documents and Ms. Dragon's own testimony) could find MHRH's explanation

(that it lacked the position) either false or pretextual.

■ Second, Ms. Dragon points out that she brought a separate case, claiming that the same facts show a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), which, in relevant part, reads as follows:

No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

She notes that the judge consolidated her two cases—the Equal Pay Act case and the Title VII case—for trial, and that the Equal Pay Act (unlike Title VII) permits a plaintiff to secure a trial before a jury. She points out that the district court did *not* grant a directed verdict on the Equal Pay Act claim. Indeed, the jury found in her favor (though the court then ordered a new trial). She adds that liability under the Equal Pay Act requires a finding that an employer paid a woman less than a man for equivalent work and that the "differential" was not "based on any factor other than sex." How is it possible, she asks, that anyone violating this Act would not *ipso facto* violate Title VII? And, that being so, how could the district court (as it did here) permit a jury to consider her Equal Pay Act case, but not her Title VII case?

We are aware that the relation between the Equal Pay Act and Title VII (as applied to certain lower paid women) is a matter of legal dispute. For one thing, the two Acts obviously differ as to whether a judge or a jury will find the relevant facts. (Therefore, when claims are consolidated, the law requires that a jury find "common" issues of fact. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472–73, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959).) This difference is not significant here, however, for we have assumed that MHRH has waived any objection to the court's apparent determination that all common Title VII issues were "jury" issues. (And, we therefore have reviewed the adequacy of the evidence under a "reasonable juror" standard more favorable to the plaintiff.)

The two statutes may also differ in the way in which they allocate burdens of proof. Some courts have held that in an Equal Pay Act case the *defendant* bears the burden of proving the existence of a reason "other than sex" for the pay differential, while in a comparable Title VII case, the plaintiff (once the defendant presents evidence of such a reason) bears the burden of "disproving" the non-sex-related reason, or, in other words, she continues to bear the burden of proving that sex caused the difference. *See Fallon,* 882 F.2d at 1215; *Peters v. City of Shreveport,* 818 F.2d 1148, 1154 n. 3 (5th Cir.1987). Other cases, however, have held that, when Equal Pay Act circumstances are involved, the normal Title VII burden of proof rules change and the defendant (as in an Equal Pay Act case) bears the relevant burden of proof. *See, e.g., Floyd v. Kellogg Sales Co.,* 841 F.2d 226, 229 n. 2 (8th Cir.), *cert. denied,* 488 U.S. 970, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988); *McKee v. Bi–State Development Agency,* 801 F.2d 1014, 1018–19 (8th Cir.1986); *Kouba v. Allstate Insurance Co.,* 691 F.2d 873, 875 (9th Cir.1982); *Ammons v. Zia Co.,* 448 F.2d 117, 119 (10th Cir.1971). We need not enter this controversy, however, because we have reviewed the record assuming (for the sake of argument) a pro-plaintiff, defense-bearing burden of proving a legitimate reason for the lower pay. Given the documentation, and the plaintiff's basic agreement with most of Mr. Plante's testimony, the record does not permit a finding of sex-based discrimination irrespective of the allocation of the "burden of proof."

Finally, we recognize the possibility, as plaintiff claims, that where a woman

38

proves an Equal Pay Act violation based on having received lower wages than a man who does the same work and the "differential" is not "based on any other factor other than sex," 29 U.S.C. § 206(d)(1), she has also proved a violation of Title VII. We shall assume, for the sake of argument, that this is so. This assumption cannot help Ms. Dragon, however, for it does not prove the court was wrong to dismiss the Title VII claim. Rather, given the record before us, it would simply suggest that she should not win her Equal Pay Act claim. That is to say, the district court's decision to submit the Equal Pay Act claim to the jury does not change our own judgment about the factual record before us, namely that it does not, and cannot, convince a reasonable factfinder that MHRH failed to promote Ms. Dragon, or pay her a level 23 salary, because of her sex.

The judgment of the district court is

*Affirmed.*