**William M. BROUGHTON, Plaintiff,**

v.

**CONNECTICUT STUDENT LOAN FOUNDATION, Defendant.**

**No. 3:97CV1215 (WWE).**

United States District Court,
D. Connecticut.

Sept. 2, 1999.

Charles D. Houlihan, Jr., Simsbury, CT, for plaintiff.

Robert L. Keepnews, Pepe & Hazard, Southport, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

### INTRODUCTION

Plaintiff William M. Broughton ("plaintiff" or "Broughton") brings this four count complaint against defendant Connecticut Student Loan Foundation ("defendant" or "CSLF") for violations of Title VII and 42 U.S.C. Section 1981, for discriminatory retaliation, and two state law counts for intentional and negligent infliction of emotional distress.

Defendant has moved for summary judgment on all four claims.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and the decision rendered on this Motion. The facts are distilled from the complaint, the parties moving papers, exhibits thereto, and their Local Rule 9(c) statements.

CSLF is a not-for-profit corporation chartered by the Connecticut General Assembly pursuant to C.G.S. § 10a–201, et seq. CSLF is in the business of lending, guaranteeing, and servicing student loans in accordance with the provisions of the Higher Education Act, 20 U.S.C. Section 1071, *et seq.*, and operating a secondary market for the purchase of student loans. CSLF has four divisions, twenty-one departments, and approximately one hundred fifty employees.

Plaintiff is a male African–American. He was hired by CSLF in 1992 as a Systems Programmer. The standard CSLF pay raise is 3%, awarded at the time of an annual review. In November, 1993, plaintiff received a 3% raise. In January, 1994, plaintiff was promoted to Systems Programmer II, with an accompanying 7% raise in pay. For the following three years, in November of 1994–1996, plaintiff received a 3% raise. In November, 1997, plaintiff received a 6% raise.

Nancy Burns ("Burns") was on the hiring committee which had interviewed plaintiff when the original systems programmer position became open. Plaintiff was her first choice.

When Broughton was hired, Burns' title was "Senior Systems Programmer." In October, 1994, CSLF underwent a compa-

ny-wide reorganization that resulted in the Senior Systems Programmer first being left vacant, and then being eliminated altogether. Since October, 1994, no person has ever held the position of Senior Systems Programmer, nor does the position appear on any CSLF organizational charts after April, 1995.

As a result of the 1994 reorganization, Burns was assigned the title of Systems Manager and became plaintiff's immediate supervisor. In October, 1994, plaintiff expressed a general interest in Burns' prior position. Burns commented negatively to Broughton with regard to this position, due to his lack of supervisory experience. Again in September, 1995, plaintiff expressed a general interest in the now-eliminated position. Plaintiff never filed a written application for the position, nor did he speak with anyone else in authority regarding the position. Accordingly, then, he was never rejected for the position.

Broughton's performance appraisals at CSLF were all above average. In 1995, however, Broughton took exception to some of Burns' explanatory comments on the review.[1] Broughton composed a written rebuttal and a request that Burns' comments be rewritten. He forwarded his request and rebuttal to Sheila Houle ("Houle"), the CSLF Director of Human Resources. In response to this request, Burns produced a new performance review revised not in the sense of retraction, but rather by further explanation of the original commentary.

Following this clarification, plaintiff testified during his deposition that he requested better communication between him and Burns during the upcoming year. At a meeting among Houle, Burns and plaintiff, it was determined to meet around mid-year to discuss the problems noted in the 1995 review, in order that plaintiff be able "to compare apples with apples." Plaintiff appeared satisfied with this arrangement, which he requested, but now

claims that it was racially motivated singular treatment.

Because computer problems can arise at any time of the day or night, CSLF has its technical people on call continuously on a rotating basis. On workdays, the on call responsibilities cease at one time. On Saturdays, Sundays and holidays they cease at another. In 1996, the State of Connecticut issued an erroneous date for the Martin Luther King holiday. Thus, when Broughton was on call that morning there was some confusion with CSLF as to when his tour of duty ended. Broughton had the on-call beeper, however, when a page was transmitted. He failed to answer the page, and a comment was made by Burns. Broughton claims the comment showed discriminatory animus because of the particular holiday.

The practice of "comp time", i.e., the bartering of overtime for time off, is not a policy of CSLF. Burns, exercising management prerogative, permitted it within her department. When this came to light, the practice was stopped. Plaintiff now alleges racial discrimination when he was not allowed to take comp time, although a white employee was. Burns testified at her deposition that the white individual was permitted the time off only as a charge against the individual's sick time.

Plaintiff left CSLF for a better paying job in March, 1998. His final words to the company were that "it has been a pleasure working at CSLF."

## *LEGAL ANALYSIS*

### I.  *The Standard of Review*

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(plaintiff must

---

1.  Broughton received the usual 3% raise in        this review.

present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir.1995)(movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

## II. The Standard As Applied

### A. The Title VII Claim

In order for a plaintiff to set forth a claim for racial discrimination, he must meet four elements: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) the ultimate filling of the position by a person not of the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendant has conceded that plaintiff meets the first two elements. It is the third and fourth elements upon which the parties disagree. The Court finds that plaintiff has failed to meet these elements.

Plaintiff did not suffer any adverse employment action. The position of Senior Systems Programmer was vacated and then eliminated. Although plaintiff expressed limited verbal interest in the position, there was no position to be filled. In *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir., 1998) the Court of Appeals, following *McDonnell* and *Burdine*, held that a plaintiff's failure to actually apply and be rejected for a specific position was fatal to a claim to a Title VII claim. "This general mandate ensures that, at the very least, the plaintiff suffers an adverse employment action, an instance of alleged discrimination, by the employer." *Brown*, 163 F.3d at 710. The *Brown* Court found that a general interest in a position, such as plaintiff's for the position at issue herein, was insufficient to establish a prima facie case. *Accord, Dragon v. Rhode Island Dep't of Mental Health*, 936 F.2d 32, 35 (1st Cir.1991)(female state employee failed to show Title VII claim when she

was denied position, not because of her sex, but because the governor had ordered the agency not to fill the position). As stated succinctly in *Burdine*, a prima facie case is dependant upon an **appropriate application for an available position and rejection therefore** which was indicative of unlawful discrimination. *Id.* at 253, 101 S.Ct. 1089.

In the present case, plaintiff verbally showed some interest in the Senior Systems Programmer position. He never made any attempt to apply for the position, and since the position was eliminated, he was never rejected for it.

The Supreme Court has defined an adverse employment action as one which "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits". *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). In this case, plaintiff experienced no change in his duties or responsibilities and received regular pay raises equal to or exceeding the CSLF norm. Plaintiff fails to meet the third element of a Title VII claim.

As to the fourth element, the position at issue was not filled by a person not of the protected class, because the position had been eliminated. Plaintiff fails to meet the fourth element and cannot establish a prima facie case.

This case appears to involve a personality conflict with plaintiff's supervisor. Burns and Houle testified that Burns sought assistance from the Human Resources Department as how to deal with the situation as it existed. The was exem-

plary action on her part. Human Resources and legal counsel rejected any inference that the lack of a positive working relationship between Broughton and Burns was based on either race or sex.[2] A review of the depositions filed with both parties' moving papers supports this conclusion. Federal law "does not guarantee a utopian workplace, or even or pleasant one ... Personality conflicts between employees are not the business of the federal courts." *Vore v. Indiana Bell Tel.Co.*, 32 F.3d 1161, 1162 (7th Cir.1994)(to state cognizable Title VII claim, employer must tangibly discriminate against employee on basis of race; employee must point to actual racial mistreatment by employer).

It is significant that when plaintiff applied for his original position with defendant, Burns was involved with the decision-making and she felt that plaintiff was the best candidate for the job, ranking him number one of all applicants. If Burns wished to discriminate against plaintiff because of his race, she had numerous opportunities to do so in the past. *See Proctor v. MCI Communications Corp.*, 19 F.Supp.2d 11, 18 (D.Conn.1998).

### B. *The Hostile Environment Claim*

Plaintiff asserts that he was retaliated against for filing a complaint after receiving what he perceived as an unjustified disciplinary warning. Such disciplinary warning was issued after plaintiff unexplainedly absented himself from a planned project, did not return a beeper message needed for his input into the project for three hours, and inadequately documented his portion of the work. Plaintiff alleges that the warning perpetuated a hostile work environment.[3] The Court disagrees

---

**2.** Burns also had no problem with the Hispanic member of the department or with other males therein.

**3.** On December 31, 1996 Broughton filed a complaint with the Connecticut Human Rights and Opportunities Commission based on what he say was a series of discriminatory actions against him. Although the disciplin-

ary warning came after his CHRO complaint, Burns testified that he was not treated any differently after the complaint and he received a higher than average pay increase of 6% in November 1997.

and, based on plaintiff's conduct, finds that the disciplinary ruling was justified.

 In order to prevail on a hostile work environment claim brought pursuant to Title VII or 42 U.S.C. Section 1981, plaintiff must establish two elements. First, he must prove that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment". *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citation omitted). Second, plaintiff must show that a specific basis exists for imputing to the CSLF the conduct that created the hostile work environment. *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). "Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment." *Edwards v. State of Connecticut Dep't. Of Transportation,* 18 F.Supp.2d 168, 175 (D.Conn.1998).

 In the present case, plaintiff has failed to demonstrate any type of hostile work environment. He was never subjected to anything that was physically threatening or humiliating, nor was he ever subjected to racially derogatory comments or offensive utterances. His list of grievances (inclusion in a customer satisfaction survey, restricting his e-mail MULTSESS use, expanding upon performance review commentary [which he agreed to], and the disciplinary notice referred to above) are insufficient as a matter of law to meet the standards of a hostile work environment claim. As noted earlier in his Title VII claim, plaintiff experienced no change in his duties or responsibilities and received regular pay raises equal to or exceeding the CSLF norm.

Finally, when plaintiff voluntarily left employment at CSLF for a better job paying more money, his departing words were that "it has been a pleasure working at CSLF." Such a proclamation is the antithesis of someone who felt he was being racially discriminated against and subjected to a hostile work environment.

### *CONCLUSION*

Plaintiff cannot meet the burden of enumerating elements of either a Title VII race discrimination claim or a hostile work environment or retaliation claim. Accordingly, defendant's Motion for Summary Judgment [Doc. No. 27] is GRANTED. Inasmuch as summary judgment has entered as to the federal claims, the Court declines to exercise jurisdiction over the state law claims.

The Clerk is directed to enter judgment for defendant and to close this case.

SO ORDERED