Maxine D. CHAMBERS, Appellant,

v.

WYNNE SCHOOL DISTRICT, Leon Wiggington, individually and as Superintendent of Wynne School District, Darrell Smith, individually and as Principal of Wynne School District, James Pitchford, individually and as Principal of Wynne Intermediate School, Appellees.

No. 89–2270.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1990.

Decided July 31, 1990.

P.A. Hollingsworth, Little Rock, Ark., for appellant.

W. Paul Blume, Little Rock, Ark., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Maxine Chambers, who is a black female and an elementary teacher in the Wynne School District ("District"), brought suit against the District, alleging that its failure to hire her as an elementary counselor constituted gender and race discrimination in violation of Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. § 2000e et seq. (1988)), and 42 U.S.C. §§ 1981, 1983 (1988). At the close of Chambers's case in chief, the district court[1] ultimately dismissed the complaint with prejudice, holding that the plaintiff had failed to make a prima facie showing of discrimination. We affirm.

Chambers received her baccalaureate degree in 1966 from Paul Quinn College in Waco, Texas and her masters degree in elementary counseling in 1971 from Arkansas State University in Jonesboro. She has been a teacher in the District since 1969.

In 1974 Chambers was offered a junior high counseling position by the District. She declined to accept this job, informing her principal that her graduate degree and expertise were in elementary counseling.

In order to obtain accreditation from the North Central Association, the District was required in 1979 to hire an additional elementary counselor. According to the District, all teachers, including Chambers, participated in a study as part of the accreditation process, during which they were apprised of the necessity to hire another counselor. This opening, however, was neither advertised in the local newspaper nor officially posted within the District. The plaintiff claims that she did not know that the job was available until it was given to a white female. The District concedes that Chambers was at least as qualified as, if not more qualified than, the hiree.

In 1983 new state education requirements mandated, among other things, that the District hire two additional counselors by June 1, 1987. Chambers acknowledges that she was informed at faculty meetings that new counselors would be hired to meet the state standards. Notwithstanding these discussions, the District neither advertised nor posted any new counseling positions. Chambers testified that she looked for announcements of new positions and anticipated that her new principal would inform her of any openings as her old principal had done in 1974. But the plaintiff made no attempt to inform school administrators that she was interested in a counseling position, and in 1984 the District filled one of the new openings with an individual who was white and the wife of one of the principals in the District. At the time of her selection, the hiree did not have her masters degree in counseling and was not certified in elementary counseling, although the District claims that she had previously begun to work towards certification.

After the 1984 hiring Chambers approached school administrators and told them of her interest in any counseling positions that might become available. According to the District, the administrators were neither aware that she had a masters degree in counseling nor knew of her interest in counseling until then. Also, according

1. The Honorable George Howard, Jr., United States District Judge, Eastern District of Arkansas.

to the District, the superintendent informed Chambers that, in order to be considered for the next opening, she would have to obtain counseling certification.

The District had to hire an additional counselor by June 1, 1987 to satisfy the state education requirements. In 1986 Chambers, along with two white women, applied for this opening. One of the white applicants was hired. The reason given by the District for not hiring Chambers was that she had not completed the requirements to obtain certification, whereas the successful applicant had done so. According to the superintendent, the District had to submit a report to the state by October of 1986 on the status of its employee certification, and failure to have all personnel fully certified was to have resulted in dissolution and annexation of the District to a neighboring district that had complied with state standards.

Under the state education standards, Chambers had to pass the National Teacher Examination in elementary counseling before she could obtain certification in that area. She completed her work toward receiving certification in March of 1987 and obtained her certification in August of that year. In 1987 the plaintiff applied for a new high school counseling position in the District, but according to the District this position was withdrawn because of lack of funding.

After filing a charge of discrimination with the Equal Employment Opportunity Commission, Chambers filed her complaint in the instant case, alleging discrimination in the District's failure to hire her in either 1984 or 1986 as a counselor. Although she offered evidence regarding the 1979 and 1987 hirings as background evidence, Chambers did not contest these other hiring decisions. After the plaintiff presented her evidence in a non-jury trial the district court, as noted, dismissed her claim with prejudice, holding that she had not established a prima facie case of discrimination. The present appeal followed.

We will not reverse the district court's finding that no prima facie case of discrimination was established unless that conclu-

sion was clearly erroneous. *See, e.g., Sherpell v. Humnoke School Dist. No. 5*, 874 F.2d 536, 539 (8th Cir.1989). As we stated in *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152 (8th Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978),

> it is not the function of an appellate court to try the case de novo, or to pass upon the credibility of witnesses or on the weight to be given to their testimony, and a finding is not clearly erroneous simply because a different result might have been reached had the case been tried originally to the appellate court.

*Id.* at 155.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court "described an appropriate model for a prima facie case [under Title VII] of racial discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981). Under this model the plaintiff must show

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *see also Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6 (applying *McDonnell Douglas* model in Title VII gender discrimination lawsuit). The *McDonnell Douglas* test has been used to evaluate the plaintiff's prima facie showing of discrimination for claims under 42 U.S.C. §§ 1981 and 1983 as well. *See, e.g., Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) (applying *McDonnell Douglas* in 42 U.S.C. § 1981 context); *Oates v. District of Columbia*, 824 F.2d 87, 91 (D.C.Cir. 1987) (noting that in analyzing whether discrimination in violation of 42 U.S.C. § 1983 has occurred, "courts generally have borrowed the analytical framework estab-

lished by the Supreme Court for cases brought under Title VII").

The *McDonnell Douglas* model is not, however, always the appropriate standard for evaluating a plaintiff's prima facie showing of discrimination. As the Supreme Court itself noted in that case, "facts necessarily will vary in Title VII cases, and the [*McDonnell Douglas* model] ... of the prima facie proof required from [the plaintiff] ... is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see also, e.g., Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Lams v. General Waterworks Corp.,* 766 F.2d 386, 391 (8th Cir.1985).

Keeping these principles in mind, we now examine whether the district court erred in holding that Chambers failed to make a prima facie showing of discrimination with respect to the 1984 and 1986 hirings.

Turning first to the 1984 hiring, we note that if the *McDonnell Douglas* test were strictly applied, Chambers would clearly not meet the standards for establishing a prima facie case because she did not formally apply for this position. Courts have generally recognized, however, that "failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim, ... as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *Equal Employment Opportunity Comm'n v. Metal Service Co.,* 892 F.2d 341, 348 (3d Cir.1990); *see also, e.g., Paxton v. Union Nat'l Bank,* 688 F.2d 552, 568 (8th Cir.1982) (finding that bank employee's expression of general desire to advance in bank was sufficient application when vacancy was not posted and plaintiff was not aware of opening until it was filled), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).

■ Cases such as *Metal Service* and *Paxton* generally indicate that formal application will not be required to establish a prima facie case if the job opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application. *See Metal Service,* 892 F.2d at 348–49 (citing cases, including *Paxton,* that rely on these factors in determining whether application is required). It is uncontested that the 1984 position was neither officially posted nor advertised. Thus, the relevant inquiries are whether Chambers had sufficient notice of the opening from other sources and whether the District administration was aware of her interest in a counseling position.

■ In her testimony Chambers admitted that she was aware from faculty meetings that the District would be hiring two additional counselors by 1987 to meet state education requirements. Although the plaintiff testified that she was not informed of the exact hiring dates for these positions, we conclude that the information that she did know put her on reasonable notice to at least engage in further inquiry with administrators concerning the openings.

On the subject of the administrators' knowledge of Chambers's interest in a counseling position, the evidence indicated that before the 1984 hiring the plaintiff's only expression of interest in a counseling position was made to her principal in 1974. This principal was no longer employed by the District in 1984, and school administrators testified that they were not aware of her interest until Chambers approached them after the 1984 hiring took place. We conclude that this evidence was sufficient for the district court to find that at the time of the 1984 hiring the District administration had no knowledge of Chambers's desire to be a counselor.

Having reviewed the circumstances surrounding the 1984 hiring, we do not believe that the *McDonnell Douglas* requirement of an application should be waived in determining whether Chambers established a prima facie case. We therefore hold that because the plaintiff made no attempt to apply or even inquire as to the 1984 posi-

tion before it was filled, the district court did not clearly err in finding that no prima facie case had been made with respect to this opening.

 Chambers did apply for the 1986 position, so the *McDonnell Douglas* requirement of formal application is met with respect to this opening. Nevertheless, we conclude that the district court was not clearly erroneous in finding no prima facie case of discrimination in the 1986 hiring decision because the evidence indicates that the plaintiff was not qualified for this position.

The uncontradicted testimony of school administrators was that the 1983 state education requirements mandated that all personnel in the District have certification in their respective fields by October of 1986. Thus, the 1986 hiree would either have to have certification or be about to be certified in order for the District to meet the state standards. Chambers had not obtained such certification by the date of the 1986 hiring, whereas the successful applicant had done so. The evidence supports a conclusion that if Chambers had been hired, she would not have been certified by October of 1986. The certification process required, among other things, that the applicant take the National Teacher's Examination, and it was not until August of 1987 that Chambers obtained certification.

Although the District did not require newly-hired counselors before 1986 to be certified, the evidence indicates that the District had good reason to insist that the 1986 hiree have certification. Moreover, District administrators testified that they had informed Chambers in 1984 that she needed certification to be considered for any new openings. Given these circumstances, we conclude that the record supports the district court's conclusion that a prima facie case did not exist with respect to the 1986 hiring because Chambers did not meet the qualifications for this job.

As the district court noted, the District's practice until 1984 of not advertising or officially posting new openings "opens the door for one to favor his friends or relatives." But while the District's hiring pro-

cedures are not commendable, the record does not show that the district court was clearly erroneous in holding that the plaintiff failed to establish a prima facie case of gender or racial discrimination. Accordingly, the district court's ruling is affirmed.