Marva BROWN, Plaintiff–Appellant,

v.

COACH STORES, INC., Defendant–Appellee.

Docket No. 97–9324.

United States Court of Appeals,
Second Circuit.

Argued June 9, 1998.

Decided Dec. 16, 1998.

Peter G. Eikenberry, New York, NY (Michael Valentine, Edward Powers, Law Office of Peter G. Eikenberry, New York, NY, of counsel), for Plaintiff–Appellant.

Stacey B. Creem, New York, N.Y. (Lauren Reiter Brody, Rosenman & Colin LLP, New York, NY, of counsel), for Defendant–Appellee.

Before: NEWMAN and PARKER, Circuit Judges, and CARMAN *, Chief Judge, U.S. Ct. of Int'l Trade.

Judge JON O. NEWMAN dissents with a separate opinion.

PARKER, Circuit Judge.

Plaintiff–Appellant Marva Brown appeals from the judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*), entered September 22, 1997, dismissing Brown's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981, 1981a, N.Y. Exec. Law § 290 *et seq.* and N.Y. City Admin. Code § 8–107 *et seq.*, that Defendant–Appellee Coach Stores, Inc. ("Coach") discriminated against her on the basis of her race. The district court held that Brown's second amended complaint failed to state a claim because Brown neglected to allege that she applied for, was qualified for and was rejected from, any specific position or positions at Coach. The court also held that Brown failed to adequately allege a claim of disparate impact.

## I. BACKGROUND

Marva Brown is an African–American who has worked as a receptionist in Coach's Human Resource Department at its headquarters in Manhattan since 1988. In December 1996, Brown, through her attorney, filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In this charge, she claimed that despite repeated requests to be promoted, Coach had refused to promote her and had instead promoted dozens of non-minority employees and "scarcely any" minorities. She also claimed that one of her co-employees at Coach told her that she looked "black like a real nigger" when she returned from a vacation, a comment for which the employee was not sanctioned, and that she was routinely excluded from business meetings and holiday parties held by her department.

In January 1997, Brown filed a complaint in the district court asserting claims under Title VII, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, N.Y. Exec. Law § 290 *et seq.* and N.Y. City Admin. Code § 8–107 *et seq.* Brown filed an amended complaint dated March 7, 1997, adding claims under 42 U.S.C. §§ 1981, 1981a, 1983. Coach moved to dismiss the amended complaint asserting that it did not state a claim because it failed to allege the dates upon which Brown sought a promotion and the position or positions to which she applied. Coach also argued that the district court lacked jurisdiction over the ADEA claim because it was not raised in Brown's EEOC charge.

At a hearing on the motion to dismiss in April 1997, the district court agreed with Coach that Brown had to specify a particular time when she sought a promotion to a specific position or positions and was denied in favor of a nonminority or she would fail to state a prima facie case of discrimination. The district court dismissed the amended complaint without prejudice while offering to allow Brown a month to engage in discovery prior to filing her second amended complaint. Brown's counsel agreed, however, that he could cure the amended complaint's deficiencies without further discovery and declined the district court's offer.

Brown filed the second amended complaint dated May 12, 1997, removing the ADEA claim and the claim brought under 42 U.S.C. § 1983 but reasserting the remainder of the previous claims. She asserted that "[c]ommencing in approximately 1990 and continuing at least through August of 1996, [she] has repeatedly requested a promotion." Specifically, Brown contended that in August 1995 and August 1996 she requested a promotion during her annual evaluation. According to the second amended complaint, during her employment with Coach she was qualified for promotion to "[d]ozens to hundreds" of open positions including "secretary," "administrative assistant" and "human resources assistant." Brown asserted that she was told repeatedly by supervisors that she was "too valuable in her current position to promote."

---

* The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

Brown alleged that she was told by her supervisors that Coach "seeks to hire and promote people who have a 'Coach look'—the examples to whom her supervisors referred were young non-minority persons." Further, Brown alleged that one of her supervisors made several discriminatory remarks about minorities. The second amended complaint also made allegations which were not asserted in the original EEOC charge regarding Coach's employment practices toward minorities as a whole. Brown points to EEOC statistics which show a low proportion of minority employees in management positions at Coach. Thus, Brown claims that Coach's hiring and promotion practices have a discriminatory impact on minorities.

Coach moved to dismiss the second amended complaint again arguing that Brown had failed to state a prima facie case because she failed to "indicate whether there was any open position at Coach for which she was qualified, she applied and was rejected, and which was given to another person."

The district court granted Coach's motion to dismiss, dismissing the second amended complaint with prejudice. The court found that Brown had failed to state a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because "[n]owhere ... does the Amended Complaint allege any specific position for which plaintiff applied, was qualified, and was rejected." The court noted that in the hearing on the motion to dismiss, Brown's counsel conceded that " '[t]here is no allegation that Ms. Brown asked at a specific time for a specific job.' "

As to Brown's disparate impact claim, the court found her statistics "very general," noting that they failed to take account of the various types of positions at Coach, the qualifications required for promotion and the relevant minority composition of the applicant pool. The court noted that even if the statistics were sufficient to establish disparities in the relevant workpools, Brown's case would fail because she has not alleged a causal relationship between a Coach policy or practice and the underrepresentation of minorities in certain jobs.

---

1. *McDonnell Douglas* concerned a failure to rehire issue. Nevertheless, the case has been cited for identifying elements of a prima facie claim

Brown filed a timely notice of appeal to this Court.

## II. DISCUSSION

■ We review de novo the district court's dismissal of the complaint. *See Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). In its review, this Court must "accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Id.* Further, we must be mindful that "the level of proof a plaintiff is required to present in order to establish a *prima facie* case of discrimination is low." *de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996).

Brown argues on appeal that she has adequately pleaded four claims of discrimination: 1) failure to promote, 2) pattern and practice discrimination, 3) disparate impact and 4) hostile environment. We disagree. We hold that Brown's failure to apply and be rejected for a specific position or positions is fatal to her failure to promote and pattern and practice claims. Further, we find Brown's pleadings inadequate to state a disparate impact claim or a hostile environment claim.

### A. *Failure to Promote Claim*

In *McDonnell Douglas*, the Supreme Court provided a framework for a prima facie claim based on an alleged discriminatory failure to promote as follows[1]: plaintiff must allege that (1) she is a member of a protected class; (2) she "applied and was qualified for a job for which the employer was seeking applicants"; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. However, the *McDonnell Douglas* Court, in a footnote, acknowledged that "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect

---

for failure to promote. *See, e.g., Raskin v. Wyatt Co.*, 125 F.3d 55, 64 (2d Cir.1997)(ADEA claim).

to differing factual situations." *Id.* at 802 n. 13, 93 S.Ct. 1817.

In *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court clarified that the *McDonnell Douglas* opinion described an "appropriate model for a prima facie case of racial discrimination" but that the "standard is not inflexible." The Court noted, however, that in establishing a prima facie case the plaintiff must show that "she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 253, 101 S.Ct. 1089.

We read *McDonnell Douglas* and *Burdine* generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion. This general mandate ensures that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer. Moreover, we believe if generally requesting a promotion in an annual review were sufficient to establish a prima facie case, employers would be unfairly burdened in their promotion efforts. Rather than simply considering individuals who have specifically applied for a promotion, an employer would additionally have to keep track of all employees who have generally expressed an interest in promotion and consider each of them for any opening for which they are qualified but did not specifically apply.

We do recognize, however, that the pleading requirements in discrimination cases are very lenient, even *de minimis.* Thus, the general rule of *McDonnell Douglas* and *Burdine* is subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement. Brown asserts that the general rule does not hold here for two reasons: 1) the jobs to which Brown sought promotion (*i.e.* those not requiring a college degree) were infrequently posted; and 2) the aura of discrimination at Coach so discouraged Brown that she ceased making application to specific positions after 1995. We are not persuaded that either allegation exempts Brown from the general pleading requirements.

As to the posting practices of Coach, Brown's complaint impliedly concedes that some positions not requiring a college degree were posted, albeit infrequently. There is no allegation in the complaint that Brown was not aware of positions, posted or not, as they came open. Brown does not charge, for example, that Coach refused to accept applications for positions or hand-picked individuals for promotion to a position without considering applicants. In fact, the complaint asserts that "dozens to hundreds" of positions were "open" for which she was qualified. Thus, we see no reason that the posting practices as alleged should exempt Brown from having to avow that she made some specific effort to apply for a particular position or positions.[2]

**2.** The dissent argues that we ignore the settled law of other circuits in so holding. We disagree. The cases upon which the dissent relies are entirely distinguishable. In each case in which a formal application was not required by a court, the position was not posted *and* either the employee had no knowledge of the position (*Paxton v. Union National Bank,* 688 F.2d 552, 568 (8th Cir.1982) (vacancy not posted and plaintiff did not hear about it until position was filled)), or the employee made an effort to apply for the specific position through an informal procedure endorsed by the employer (*EEOC v. Metal Serv. Co.,* 892 F.2d 341, 349 (3d Cir.1990) (plaintiffs "followed precisely the procedure established by [defendant] for how a person applies for a job at the company"); *Holsey v. Armour & Co.,* 743 F.2d 199, 208–09 (4th Cir.1984) (sales jobs were not posted and defendant's representatives testified

that one way to move into the position was to talk with a supervisor as the plaintiff had done)). In *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214, 1217 (8th Cir.1990), also relied upon by the dissent, the plaintiff was held to have failed to establish a prima facie case because she was on notice of the position and failed to apply.

In this case, the plain language of the Amended Complaint states that some positions were posted and that dozens to hundreds were open. It also states that Brown applied for specific positions prior to 1995. As a result, we cannot draw the inference urged by the dissent that "Brown was unaware of unposted positions." Dissent, *infra* at [page 713]. Neither can we find any allegation that there was an alternative application process accepted by the employer which Brown followed.

## B. Pattern and Practice Claim

As noted above, Brown contends that she should be exempted from the general pleading requirement that she assert she applied and was rejected for a specific position or positions because the pattern and practice of discrimination at Coach dissuaded her from applying. She relies on the Supreme Court's decision in *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), as the basis for this contention.

In *Teamsters,* the Supreme Court held that where a group of plaintiffs had proven a history of systematic discrimination by the defendant employer, "the company's assertion that a person who has not actually applied for a job can *never* be awarded seniority relief cannot prevail." *Id.* at 365, 97 S.Ct. 1843. The Court went on to hold that such an application is not required when it would simply constitute a "futile gesture" or a "vain gesture in light of employer discrimination." *Id.* at 366, 97 S.Ct. 1843. The Court then noted that such a plaintiff carries the "not always easy burden" of showing that he or she would have applied for a job had it not been for the company's deeply entrenched discriminatory practices. *Id.* at 368, 97 S.Ct. 1843.

The initial problem with Brown's reliance on *Teamsters* is that the leniency afforded individual plaintiffs in that case hinged on an initial finding of a history of discrimination by the employer to the class of plaintiffs. As one employment law treatise notes,

> Some of the Supreme Court's language [in *Teamsters* ] is very general and could be mistakenly read to mean that the words "applied for" in the *McDonnell Douglas* test do not mean what they say. Taking the decision as a whole, however, it is evident that the Court in *Teamsters* was not laying down rules for private, non-class actions. Of the cases cited by the Court for the proposition that non-applicants can recover, none were private non-class actions.

> In the author's view, this distinction is a sound one. In an individual disparate treatment suit, the fact of application, along with the other elements of a prima facie case, is used to prove both the existence of discrimination and the consequential injury to the plaintiff. In the remedial stage of a pattern or practice suit, widespread discrimination is taken as a given, and the individual plaintiff is charged merely with the responsibility of showing that he of [sic] she is a member of the affected group.... It would be unthinkable to routinely permit non-applicant plaintiffs in individual suits to recover back pay, retroactive seniority, and the like based on what amounts to mere speculation that they would have been rejected for discriminatory reasons had they applied.

1 Lex K. Larson, *Employment Discrimination* § 8.02[2], at 8-30-8-31 (2d Ed.1997) (footnote omitted).

■ However, even if we assume that Brown has adequately pleaded a claim of pattern and practice discrimination by Coach, which is questionable, the *Teamsters* decision does not salvage her complaint. Accepting as true Brown's bare allegation that she ceased applying after 1995 for specific positions because such application would have been futile, Brown has failed to allege the specific positions to which she would have applied had the alleged discriminatory practices not existed.[3] The fact that she felt comfortable on at least two occasions gener-

---

3. The dissent argues that this is a new pleading requirement, that it is "pointless," and that Brown should be given leave to amend yet again to meet this burden. We disagree. As noted above, the Supreme Court in *Teamsters* stated that plaintiffs must meet the "not always easy burden" of showing that they "would have applied for the job" but for the discriminatory practices of the employer. *Teamsters,* 431 U.S. at 368, 97 S.Ct. 1843. This language requires a plaintiff to do more than simply say, as has Brown, that she would have applied for dozens of unspecified positions but for the discrimina-

tory atmosphere. As explained in Part IIA of the opinion, the *McDonnell Douglas* progeny also requires more specificity.

We also note the inherent inconsistency in the dissent's position. The dissent first argues that we must infer "that Brown was unaware of unposted positions." Dissent, *infra* at [page 713]. It next argues that we must accept that Brown was aware of specific positions but chose to stop applying for them because such applications would have been futile. Dissent, *infra* at [page 715–17].

ally requesting to be promoted belies the notion that a specific application would have been in vain. Further, Brown has failed to even allege that she would have applied for specific positions had the alleged discriminatory practices not existed.

We find, therefore, no reason to relieve Brown of meeting the *de minimis* pleading requirement in a Title VII race discrimination case of delineating a position or positions to which she applied and was rejected.[4]

## C. *Disparate Impact Claim*

We next turn to Brown's disparate impact claim. At the outset, we note that Coach asserts that the Court has no jurisdiction over the claim because Brown failed to state it in her EEOC charge. It is true that we generally have no jurisdiction to hear claims not alleged in the employee's EEOC charge. The purpose of this exhaustion requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. United States Immigration & Naturalization Service*, 762 F.2d 193, 198 (2d Cir.1985).

However, claims which are "reasonably related" to the EEOC charge may be brought in a subsequent federal court action. *See Butts v. City of New York Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993). We allow such claims to continue where "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (citation and quotation omitted). We find Brown's disparate impact claim reasonably related to her failure to promote claim as we would expect that the EEOC, in investigating the complaint, would have assessed Coach's promotion policies and their effect on minority employees. Thus, we consider the merits of the claim.

To establish a prima facie case of disparate impact, a plaintiff must show that a facially neutral employment policy or practice has a significant disparate impact. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 430–32, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient. *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *see also Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 159 (2d Cir.1991). In *Lopez*, this Court focused on the "causal connection" requirement of Title VII noting that it

recognizes that underrepresentation of blacks might result from any number of factors, and it places an initial burden on the plaintiff to show that the specific factor challenged under the disparate impact model results in the discriminatory impact.

930 F.2d at 160 (citations and quotation omitted).

Brown's allegations of disparate impact fail because they do not adequately allege a causal connection between any facially neutral policy at Coach and the resultant proportion of minority employees. Brown's complaint uses general reports of the EEOC to assert that from 1990 to 1995 the overall percentage of minority employees at Coach headquarters dropped from 30% to 11%, while in 1995 the New York City retail trade employed almost 25% minority employees. Further, the complaint contends that Coach did not employ any minority managers in its headquarters location from 1990–1994 and then in 1995 reported three minority managers.

Brown does not connect these general statistics to any Coach policy. Although Brown asserts that Coach's training and promotion policies deliberately keep minorities from being promoted, those alleged policies seem utterly disconnected from the fact that the overall percentage of minority employees as a whole at Coach dropped between 1990 and

---

4. Because this particular pleading issue has not been previously discussed by this Court, we would normally be inclined to dismiss without prejudice to allow plaintiff to replead in light of the decision announced herein. Such an allowance is not justified here, however, because the district court already gave Brown the opportunity to file an amended complaint designed to cure

the very defect that remains. We are unmoved by Brown's protestations on appeal that she was not permitted any discovery which would have assisted in refining her complaint. The district court specifically offered Brown a period of discovery prior to the date of filing the second amended complaint and Brown's counsel declined.

1995 and is less than the percentage of minorities in the retail industry as a whole. The statistics shed no light on whether there is a disparity between the number of minorities in the higher positions at Coach and in the retail industry's higher positions which, if significantly different, could support an inference of discriminatory promotion practices at Coach. As such, her statistics are similar to the statistics in *Wards Cove* which showed a high percentage of minority employees in low-level cannery jobs and a small percentage in non-cannery jobs, which the Supreme Court found insufficient to establish a prima facie case of disparate impact. *See Wards Cove*, 490 U.S. at 651–52, 109 S.Ct. 2115.

Brown's claim is also undercut by her acknowledgment that Coach hired (or promoted) three minorities for manager positions in 1995 (although two were allegedly subsequently let go). Brown fails to connect the statistics with any other policy. As a result, her complaint fails to adequately allege a disparate impact claim.

### D. *Hostile Work Environment Claim*

 On appeal, Brown also argues that she was subjected to a hostile work environment at Coach. This claim was apparently not considered by the district court as it is not plainly articulated in Brown's complaint. The complaint does contend that one Coach supervisor made, on occasion, racist remarks and one such comment was directed at Brown. Again, we find the allegations in the complaint lacking. Although the alleged comments are despicable and offensive, they fail to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment. *See Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987). Brown also failed to allege that the remarks unreasonably interfered with her job performance. *See Harris*, 510 U.S. at 21, 114 S.Ct. 367; *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62–63 (2d Cir.1992). As a result, she has not alleged a prima facie case of hostile work environment.

## III. CONCLUSION

We hereby AFFIRM the decision of the district court dismissing Brown's complaint for failure to state a claim.

JON O. NEWMAN, Circuit Judge, dissenting:

Departing from the settled law of all the circuits to have considered the issue, the Court today decides that the complaint of a Title VII plaintiff, alleging discrimination in the denial of promotion to unposted positions, must be dismissed if the plaintiff does not allege that she explicitly applied for one or more specific positions. The other circuits, following the Supreme Court's general principle that a specific application is not always required in Title VII cases, *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 363–64, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), have quite properly ruled that, with respect to unposted positions, reasonable efforts to make the employer aware of an employee's interest in promotion suffice at the pleading stage, with the reasonableness of the employee's efforts to communicate her interest to be determined after presentation of evidence. *See Chambers v. Wynne School District*, 909 F.2d 1214, 1217 (8th Cir.1990); *E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 348–49 (3d Cir.1990); *Holsey v. Armour & Co.*, 743 F.2d 199, 208–09 (4th Cir.1984); *Paxton v. Union National Bank*, 688 F.2d 552, 568 (8th Cir.1982). I respectfully dissent from the Court's unprecedented and ill-advised decision.

Marva Brown alleges that for several years she has been denied promotion from her job as receptionist at Coach Stores, Inc. ("Coach") because she is an African-American. The Court rejects her complaint because she has not alleged a specific position or positions for which she applied. Though an identification of specific positions might well be required of a Title VII plaintiff claiming racially motivated denial of promotion to posted positions, Brown has alleged that a practice of her employer is "[i]nfrequent postings of available positions," Amended Complaint ¶ 39(a), particularly positions not requiring a college degree, id. ¶ 25(b). Moreover, she has also alleged that

- at her annual performance reviews in 1995 and 1996 and on various other occasions from 1990 to 1994, she has requested promotions, Amended Complaint ¶¶ 16, 17;
- she is qualified for several positions above the rank of receptionist, including secretary, administrative assistant, and human resources assistant, *id.* ¶ 19;
- dozens of positions for secretary, administrative assistant, and human resources assistant have been filled by non-minority Coach employees and non-minority persons hired laterally, *id.*, ¶¶ 19, 20;
- Brown's supervisors, to whom she made her requests for promotion, told her that she is "too valuable in her current position to promote," *id.* ¶ 18.

By requiring identification of specific positions for which Brown applied and was denied promotion, and dismissing this complaint for lack of such specificity, the Court has denied Brown the benefit of reasonable inferences that the Court acknowledges "must" be drawn in her favor at this preliminary stage of the case. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). For example, the Court faults Brown for not alleging that she "was not aware of positions, posted or not, as they came open." 163 F.3d at 710. Surely a reasonable inference from an allegation that "[i]nfrequent postings of available positions" were a practice of her employer, *see* Amended Complaint ¶ 39(a), is that Brown was unaware of unposted positions. If development of the facts should reveal that the availability of positions to which Brown wanted to be promoted was well known throughout the company, even without formal posting, her claim might well fail at trial, or even be subject to summary judgment, if the facts of widespread knowledge of job availability are undisputed.

The Court also relies on Brown's allegation that she had never been promoted despite "[d]ozens to hundreds of positions being *open*" for which she was qualified. *Id.* ¶ 21(d) (emphasis added). Reading this allegation in the light most *unfavorable* to the plaintiff, the Court takes the word "open" to mean that the positions were known to be open beforehand and therefore available for specific applications. But the favorable inference to which the plaintiff is entitled from this allegation, coupled with the allegation of a company practice of infrequent postings, is that these positions became, but did not necessarily remain, open; they were filled without posting; and their "openness" was not known to potential applicants.

With respect to unposted positions at Coach, the Court's dismissal creates a pleading rule for Title VII plaintiffs that is impossible to meet before the position is filled and pointless to be met after the position has been filled. An employee cannot be expected to apply for a particular position that is currently filled, nor, in the absence of posting, to have advance knowledge that a particular position is soon to become available. If, on the other hand, the Court deems the complaint deficient because Brown failed to identify particular unposted positions *after* they were filled, it has created a needless barrier for Title VII plaintiffs, but, in any event, one that Brown should now be afforded an opportunity to meet by a further chance to amend. Before this decision, it was not the law that employees denied promotion to unposted positions had to identify those positions after they were filled. If this is now the law, Brown should be afforded an opportunity to amend in order to identify, for example, the positions of secretary to named personnel that were filled by non-minorities.

Apparently finding no decision upholding, at the pleading stage, the dismissal of a Title VII complaint for lack of an allegation that the plaintiff applied for promotion to an unposted position, the Court relegates to a footnote and endeavors to distinguish the four court of appeals decisions, *Chambers, Metal Service, Holsey,* and *Paxton,* that provide substantial support for the sufficiency of Brown's complaint. *See* 163 F.3d at 710 n. 2. These decisions support Brown because in all four cases, the complaints were *not* dismissed at the pleading stage, despite the lack of an allegation of an application for a specific unposted position, and the job-seekers were permitted to present evidence of the efforts they made to make their potential employers aware of their interest. After evidence was presented, one plaintiff's efforts were

deemed inadequate, and the minimal efforts of three others were deemed sufficient.

In *Chambers,* a finding that the plaintiff's efforts were insufficient was held not to be clearly erroneous on evidence that the plaintiff made "no attempt" to inform the defendant of her interest in one position, *see Chambers,* 909 F.2d at 1215, and made no further inquiry after becoming aware that two specific positions were to be filled, *see id.* at 1217. In *Metal Service,* the absence of a formal application for entry-level employment was held *not* to warrant dismissal of a Title VII suit. The plaintiff EEOC had presented evidence in its direct case to show that the job-seekers "did everything reasonably possible to make known to [the potential employer] their interest in applying for a job," 892 F.2d at 349 (footnote omitted), and the Third Circuit reversed the District Court's entry of a directed verdict for the defendant. In *Holsey,* a plaintiff's "casual inquiry" concerning an unposted position was ruled sufficient to alert the employer to the plaintiff's interest in a promotion. *See Holsey,* 743 F.2d at 208. In *Paxton,* a plaintiff's indication to a manager of his "desire to advance" in the employer's computer center was ruled sufficient to alert the employer to the plaintiff's interest in promotion to the unposted position of lead control clerk. *See Paxton,* 688 F.2d at 568.

The Court's effort to distinguish these four decisions is unpersuasive. *Chambers* is "distinguished" because the evidence at trial showed that the plaintiff knew of the position at issue and did not apply, but Brown has had no trial and the reasonable inference from her complaint alleging infrequent postings is that she did not know about unposted positions. *Metal Service* is "distinguished" because the plaintiffs followed the company's procedures for applying for jobs, but the reasonableness of the plaintiffs' application efforts was determined after all the evidence was presented at trial, not at the pleading stage as the Court does with respect to Brown. *Holsey* is "distinguished" because a company representative testified that talking with a supervisor was one way of expressing interest in a promotion, but Brown's complaint alleges that she requested promotions during annual performance reviews by super-

visors. *Paxton* is "distinguished" because the plaintiff did not hear about the unposted position until it was filled, but that is precisely the reasonable inference from Brown's complaint, at least until some discovery shows that she had prior knowledge of the unposted positions.

All of these decisions support the proposition that the lack of an application for promotion to a specific position is not a ground for dismissal of a Title VII complaint at the pleading stage where the complaint alleges (a) that the position is not posted and (b) that the plaintiff made efforts to make the employer aware of her interest in a promotion. The allegations of Brown's complaint easily meet this standard. *See also Abrams v. Baylor College of Medicine,* 581 F.Supp. 1570, 1579 (S.D.Tex.1984) (informal communication of desire to participate in advancement program sufficient), *aff'd in part and rev'd in part on other grounds,* 805 F.2d 528 (5th Cir.1986); *Ferguson v. E.I. duPont de Nemours and Co.,* 560 F.Supp. 1172, 1193 (D.Del.1983) ("generalized expression of interest [to supervisor] can be considered an application"); *cf. Teamsters,* 431 U.S. at 363–64, 97 S.Ct. 1843 (employee's failure to apply for job "not an inexorable bar" to award of retroactive seniority).

The Court asserts that it "cannot draw the inference" that Brown was unaware of *unposted* positions because some positions were posted. *See* 163 F.3d at 710 n. 2. I cannot understand how the employer's posting of some positions can possibly defeat Brown's claim that she was unaware of those positions that were not posted. Where some positions are posted, the most reasonable inference is that employees are unaware of those positions that are not posted. Moreover, the Court's dismissal has denied Brown the opportunity to present evidence from which such an inference may be drawn. In any event, whether such an inference is to be drawn is a decision for a fact-finder considering the evidence, not for an appellate court assessing only the complaint. At this stage, Brown is entitled to have her complaint read with all reasonable inferences drawn in her favor. *See Bernheim,* 79 F.3d at 321. Her complaint "should not be dismissed for fail-

ure to state a claim unless it appears beyond doubt that [she] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). There is no basis for doubt at this stage that Brown can testify that she was unaware of unposted positions.

Thus, until today, it appears that no court has dismissed at the pleading stage a complaint claiming discrimination in promotion to unposted positions for lack of an allegation of an application for a specific position. The law elsewhere is precisely to the contrary, allowing plaintiffs to proceed past the pleading stage so that they can present evidence of their efforts to make their interest known to their employer.

In the District Court, the Trial Judge expressed concern that if a formal application for a specific position were not required to be alleged in the complaint, a plaintiff interested in 17 jobs for which she was qualified might receive damages for all 17 jobs. *See* Transcript of July 17, 1997, at 20. That apprehension is unfounded. If Brown establishes a discriminatory lack of promotion, her damages would be limited to one position, perhaps based on the average wage of the positions for which she was qualified, or even limited to the lowest paying position. Moreover, even without damages, her relief could include an injunction requiring consideration for the next available position without regard to race.

Though Brown's allegations that she repeatedly made her supervisors aware of her interest in promotions to unposted positions should suffice to withstand dismissal, her complaint is also sufficient on the alternative ground that the alleged circumstances show the futility of specific applications. As the Court acknowledges, the Supreme Court has recognized that a nonapplicant may proceed with a Title VII claim where the plaintiff was "deterred from applying for the job by the employer's discriminatory practices." *Teamsters*, 431 U.S. at 367–68, 97 S.Ct. 1843. This Court has also recognized that those facing an "entrenched discriminatory system" are "not required to keep beating their heads against the wall by reapplying." *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1017 (2d Cir.1980); *see Berkman v. City of New York*, 705 F.2d 584, 594 (2d Cir.1983) ("Those who have been deterred by a discriminatory practice from applying for employment are as much victims of discrimination as are actual applicants whom the practice has caused to be rejected."). Brown has made numerous allegations of Coach's discriminatory employment practices. Amended Complaint ¶¶ 33(a)–(h).

The Court initially rejects the "futility" doctrine of *Teamsters* and *Grant* by quoting extensively from a treatise writer who believes that what the Supreme Court said in *Teamsters* should apply only to class actions. *See* 1 Lex K. Larson, *Employment Discrimination* § 8.02[2], at 8–30–31 (2d ed.1997). However, neither the Supreme Court in *Teamsters* nor this Court in *Grant* specified that the "futility" principle is limited to class actions. Even if it were, Brown has brought her suit as a class action. *See* Amended Complaint ¶¶ 50–53.

Apart from Larson's novel theory, the Court considers "questionable" the adequacy of Brown's pleading that Coach's pattern of discrimination discouraged her from applying for posted positions. In fact, her allegation is entirely clear:

> Since approximately 1995 Ms. Brown has been so discouraged from making applications for positions at Coach by reason of Coach[']s discriminatory policies and practices that she ceased making application for individual positions or approaching individual supervisors as positions arose—rather Ms. Brown has repeatedly asked her direct supervisor for promotion from her receptionist position once a year at her annual review in August.

Amended Complaint ¶ 35. The Court distorts the meaning of this allegation by suggesting that Brown's generalized requests for promotion, made at her annual review, "belie[ ] the notion that a specific application would have been in vain." 163 F.3d at 712. On the contrary, her entirely valid point, precisely pleaded, is that she made general promotion requests to her immediate supervisors because the company's discriminatory employment practices discouraged her from applying to other supervisors as specific positions arose.

The Court also rejects Brown's "futility" argument by suggesting that there is an inconsistency between my invocation of the "futility" doctrine and my prior conclusion that Brown's complaint adequately alleges unawareness of unposted positions. 163 F.3d 711 n. 3. There is no inconsistency because two different groups of positions are involved. Brown's complaint is fairly to be understood as alleging that she was unaware of many unposted positions and that she was discouraged by discrimination from applying for any unposted positions of which she might have become aware. In any event, even if Brown's "futility" contention is unavailing, rejection of that contention does not defeat her basic claim that she is not required to plead that she applied for (or was discouraged from applying for) unposted positions.

This plaintiff has made serious allegations of discrimination. She alleges that when she returned from a Caribbean vacation, one of her supervisors said that "she was black like a real nigger." Amended Complaint ¶ 23. Coach's Human Resources Manager frequently referred to Hispanic employees as "spics" and rejected a raise for an Hispanic employee by telling the employee's supervisor, "If he doesn't get a raise; where is he going to go? To McDonald's and sweep the floor?—that's all they can do." *Id.* ¶ 30(a), (b). Brown has been told by her supervisors that Coach seeks to promote people who have a "Coach look" and those indicated as having the "Coach look" were non-minority persons. *Id.* ¶ 22(b). She has been required to train non-minority employees, but never minority employees, to be receptionists, and they have been promoted. *Id.* ¶ 22(a). Coach's practice of encouraging minority employees to leave after five years is so well known that minority employees hold parties for minority employees who have reached the five-year mark. *Id.* ¶ 25(a). Brown was recently asked whether she "would not be happier leaving Coach." *Id.* ¶ 22(d).

I dissent from the Court's refusal to give Marva Brown her day in court.