[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 4924
This is an administrative appeal by the plaintiff, State of Connecticut, Department of Public Health ("DPH"), from a final decision of a human rights referee of the Commission on Human Rights and Opportunities ("CHRO"), finding illegal discrimination in promotional opportunities[1] by DPH against its employee, Pamela Hodge. The appeal by DPH is authorized by General Statutes §§ 46a-94a and 4-183 of the Uniform Administrative Procedure Act ("UAPA"). For the reasons set forth below, the court finds the issues in favor of the defendants.
The complaint was brought by Hodge on July 18, 1996, and a public hearing was held on the complaint on May 5-6, 1999. The human rights referee's findings of fact may be summarized as follows:
1. Hodge is an African American/Black female.
 2. On April 10, 1992, Hodge was hired by DPH as a clerk typist for the immunization program of the infectious disease division of the Bureau of Health Promotion and Disease Prevention at DPH.
 3. Approximately one year after Hodge's hiring, she filed a union grievance claiming that she was working out of class and/or that DPH failed to promote her.
 4. The union grievance was resolved by DPH placing Hodge into a career training program on or about September 17, 1993.
 5. Hodge was not required to complete a formal written job application when she was promoted from clerk typist to career trainee.
 6. On September 13, 1994, Hodge was promoted to Epidemiologist I.
 7. Hodge was not required to complete a formal written job application when she was promoted from career trainee to Epidemiologist I.
 8. At the time of Hodge's promotion to Epidemiologist I, she was the only African American within the immunization program.
 9. On or about December 31, 1994, Vincent Sacco became CT Page 4925 Hodge's supervisor.
 10. Hodge was on maternity leave from April 8, 1995, to October 10, 1995.
 11. In July 1995, while Hodge was on maternity leave, an Epidemiologist II position became available due to the departure of Nancy Barrett.
 12. On October 4, 1995, Sacco mailed Hodge a performance evaluation at her home.
 13. Upon her return to work on October 10, 1995, Hodge expressed to Sacco her interest in the open Epidemiologist II position.
 14. Sacco indicated that the Epidemiologist II position was frozen and could not be filled.
 15. Between October 1995 and December 1995, Hodge made approximately ten inquiries to Sacco regarding the open Epidemiologist II position.
 16. Sacco repeatedly responded to Hodge's inquiries that the open Epidemiologist II position could not be filled due to a hiring freeze.
 17. A statewide hiring freeze was in effect since January 5, 1995.
 18. Hodge took a second maternity/medical leave from January 1996 to August 30, 1996.
 19. Hodge wanted to be considered for the Epidemiologist II position if the hiring freeze were lifted while she was on maternity/medical leave. To stay informed of the status of the position, Hodge made numerous telephone calls to DPH, including Sacco, between January 1996 and April 17, 1996.
 20. Sacco repeatedly responded to Hodge's inquiries about the open Epidemiologist II position in the same manner: "[T]he position is frozen."
 21. On April 17, 1996, DPH posted internally an announcement for the position of Epidemiologist II, CT Page 4926 with a closing date of April 23, 1996.
 22. Internal posting for vacant positions like that of Epidemiologist II typically are displayed for seven days.
 23. At the time of the April 17, 1996, posting, there was no current eligibility list for the position of Epidemiologist II.
 24. Sacco, although not prohibited from doing so, did not notify Hodge of the posting (which she could not see because she was home on maternity/medical leave), even though he was aware of her interest in the Epidemiologist II position.
 25. On April 15, 1996, Laura Quigley, a white, non-pregnant female, submitted an application for the Epidemiologist II position, with a handwritten note to Sacco attached, which read: "Dear Vin — Here you go! Please let me know when you hear anything. Thanks again! Laura."
 26. If Hodge had known the position of Epidemiologist II was posted, she would have applied for the position.
 27. On May 31, 1996, Hodge visited Sacco at his office to inquire about the Epidemiologist II position. Sacco told her that the position was still frozen and even if it were to be filled that Hodge would not be suited for it.
 28. On May 31, 1996, Sacco distributed a flyer announcing the hiring of Quigley, effective June 14, 1996, as a provisional employee in the position of Epidemiologist II, to become permanent pending successful completion of an examination for the position.
 29. On or about August 6, 1996, Quigley took an Epidemiologist II examination and earned a passing score of 73; the other six candidates who took the same examination earned scores ranging from 75 to 93.
 30. On August 6, 1998, Hodge earned a score of 80 on CT Page 4927 an Epidemiologist II examination.
 31. At the time of Quigley's hire, DPH required persons seeking employment in the Epidemiologist II position to have the following experience: "`[s]ix (6) years' experience in conducting epidemiological investigations in a responsible technical or professional capacity' with special experience of one year `interviewing and performing trend analyses at or above the level of Epidemiologist I.'"
 32. Hodge met these qualifications based on her education, training and work experience.
 33. At the time of Quigley's hire, DPH's affirmative action hiring goal for the position of Epidemiologist II was a black male, black female, Hispanic male or Hispanic female.
 34. Sacco acknowledged that Quigley's hire did not meet the affirmative action goal set for the position, as she is a white female.
 35. Quigley left her position on or about May 5, 1998, to be able to spend more time with her newborn son. Upon learning of Quigley's resignation, Hodge reiterated to Sacco her desire to fill the position of Epidemiologist II.
 36. DPH sought funding through a grant application in September 1998 to refill the Epidemiologist II position for Calendar Year 1999.
 37. Sacco told Hodge that he was not filling the position any longer because he was tired of people going out on maternity leave and not coming back.[2]
 38. The position of Epidemiologist II most recently held by Quigley has not been filled. Hodge remains employed by DPH as an Epidemiologist I.
(Return of Record ("ROR"), Volume 1, Item 1, pp. 3-7.)
Based upon these findings of fact, the human rights referee concluded that DPH had discriminated against Hodge, ordered her promotion to Epidemiologist II, and awarded her the back pay that she would have earned CT Page 4928 had she been promoted. (ROR, Volume I, Item 1, pp. 9-21.) This appeal followed. Because DPH is ordered to pay damages to Hodge and to comply with other orders, the court finds that DPH is aggrieved for purposes of appeal.
DPH claims on appeal that Hodge did not establish a prima facie case, and, alternatively, that it offered a non-discriminatory reason for its decision not to promote Hodge. In evaluating these claims, the court is guided by the substantial evidence test. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . ." (Citation omitted.) Adriani v. CHRO,220 Conn. 307, 314-15 (1991).
 The scope of permissible review is governed by § 4-183 (j) and is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [agency]. . . . The conclusion reached by the [agency] must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by [the agency]. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its orders, acted unreasonably, arbitrarily, illegally or in abuse of discretion.
(Citations omitted; footnote omitted; internal quotation marks omitted). Domestic Violence Services of Greater New Haven, Inc. v. FOIC,47 Conn. App. 466, 469-70 (1998).
The parties agree that the applicable test in this disparate treatment case is that set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792,93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Ann Howard's Apricot'sRestaurant v. CHRO, 237 Conn. 209 (1996). Under this test where discrimination in promotion is claimed, Hodge had first to establish by a preponderance of the evidence a prima facie case that (1) she was within a class protected by the statutes; (2) she had applied for the position; (3) she was applying for a position for which DPH had a vacancy; (4) she was qualified for the position; (5) she was denied the position and DPH continued to seek applicants or filled the position with a person from a different class. Patterson v. McLean Credit Union, 491 U.S. 164, 186-87, CT Page 4929109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).
DPH first contests the human rights referee's finding that Hodge met the second requirement of a prima facie case, claiming that Hodge never "applied" for the position. Recent cases have indicated the meaning of the term "applied" in the Title VII context. In Connecticut federal court Judge Burns has stated: "It is well established that an essential element to any failure to . . . promote claim is that the plaintiff has applied for or at least expressed interest in . . . promotion." Chen v. Bowes, U.S. District Court, Docket No. 3:98-CV-2478 (November 22, 2000, Burns,J.). "[A]lthough it is usually necessary for a plaintiff to show that he applied for an available position, that element of the prima facie case will be excused where he demonstrates that the employer `had some reason
or duty to consider him for the position.'" (Emphasis added). Dews v.A.B. Dick Co., 231 F.3d 1016, 1021. 1021-22 (6th Cir. 2000), quotingKehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1105 n. 13 (8th Cir. 1996).
DPH argues that the case of Brown v. Coach Stores, Inc., 163 F.3d 706
(2d Cir. 1998) mandates that where there is a posted announcement, the employee-complainant must have made a formal application and an expression of interest in applying is insufficient to establish a prima facie case. DPH reads too much into Brown. The court held only that the plaintiff in Brown did not allege "that she . . . applied for a specific position or positions and was rejected therefrom . . . [but] merely assert[ed] that on several occasions she . . . generally requested promotion." Id., 710. "In fact, the complaint asserts that `dozens to hundreds' of positions were `open' for which she was qualified." Id. Therefore Brown does not reject a finding of "application" where an employee specifically indicates that he or she has an interest in a particular promotional position.[3]
DPH had posted an announcement on April 17, 1996, of Epidemiologist II, and Hodge never took the formal step of submitting an application for this position as posted. The record contains sufficient evidence, however, that Hodge notified her supervisor and other employees of DPH from October 1995 into April 1996 of her interest in applying for the position. (ROR, Volume 7, Item 106, pp. 596, 604-05, 715-17.) The court concludes that the human rights referee properly found that Hodge expressed an interest on numerous occasions and, therefore, under the applicable law as discussed above, "applied" for the position.
DPH raises the fact that Hodge did not apply to take the open competitive examination for Epidemiologist II with a closing date of July 8, 1996. This argument misses the point. Hodge's CHRO complaint alleges that she learned in June that the position had been posted and filled by CT Page 4930 Quigley. "I was never notified about the opening of an Epidemiologist II or given an opportunity to apply." (ROR, Volume 2, Item 44, p. 257.) The complaint is thus framed in terms of the April 17, 1996, job posting and any alleged discrimination was to be assessed by CHRO as regards that incident. Regs., Conn. State Agencies § 46a-54-52 (b); Bogdahn v.CHRO, 46 Conn. Sup. 153, 158 (1999).
As seen above, under the disparate treatment formula, a complainant must prove that there was a vacancy in the position at the time that he or she was denied the position. McDonnell Douglas Corp. v. Green, supra, 411 U.S. 802. DPH contends that due to a hiring freeze there was no vacancy at the times Hodge contacted Sacco. The record does not support this contention. Quigley's application was dated two days before the internal posting at DPH. (ROR, Volume 5, Item 84, p. 365.) The application indicated that a state employee had told Quigley of the job opening. (ROR, Volume 5, Item 84, p. 367.) In addition, Quigley wrote to Sacco on April 15, 1996, to thank him "again" for his assistance. (ROR, Volume 5, Item 105, p. 569.) The hearing officer made a finding that Quigley's application was "clearly outside of the job posting period, but was nonetheless accepted." (ROR, Volume 1, Item 1, p. 14.) Clearly the record reflects that applications were being sought by DPH prior to April 17, 1996.
There are no other challenges by the DPH to Hodge's prima facie case. Therefore, the court finds that the human rights referee correctly concluded that Hodge satisfied the "prima facie" case requirement ofMcDonnell Douglas and Ann Howard's. The court must next look to see whether DPH articulated a legitimate, nondiscriminatory reason for the failure to promote Hodge. DPH claims the reason to be that Quigley was more qualified than Hodge for the job. The court finds that DPH has proffered a nondiscriminatory reason. McDonnell Douglas Corp. v. Green, supra, 411 U.S. 808. Therefore the burden would then shift to Hodge to prove that the reason advanced by DPH was a pretext for the actual reason, a discriminatory one. Hodge had to prove that the reason advanced by DPH for the failure to place her in the Epidemiology II position as posted on April 17, 1996, was "unworthy of credence." Reeves v. SandersonPlumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2106,147 L.Ed.2d 105
(2000), quoting Texas Department of Community Affairs v. Burdine,450 U.S. 248, 256, 101 S.Ct. 1089 (1981); McDonnell Douglas Corp. v.Green, supra, 805; Ann Howard's Apricot's Restaurant v. CHRO, supra,237 Conn. 226.
The hearing officer concluded that Hodge had made the required showing of pretext. The record supports this finding. There is evidence that Quigley and Sacco had a professional relationship for a number of years and had worked together on health projects in Waterbury. They met on at CT Page 4931 least a quarterly basis to review these projects. Quigley asked Sacco's assistance in obtaining a position with DPH. He agreed to help her and wrote a letter of recommendation for her for one position. (ROR, Volume 6, Item 106, pp. 732-34.)
In addition on May 31, 1996, the very day that Sacco announced the provisional hiring of Quigley, he met earlier with Hodge. Hodge had traveled to the office for a visit with her young children. (ROR, Volume 6, Item 106, pp. 679, 716.) Hodge, unaware that the job had been posted in April, asked Sacco about the Epidemiologist II position. He replied that the position was still frozen; in any event if to be filled, the position would not be suitable for her. (ROR, Volume 6, Item 106, pp. 606-07.)
Finally, as found by the human rights referee:
 Furthermore, Vincent Sacco, the agent of the respondent, illuminated some of his motivation as to why complainant may not have been considered for the promotion to the position of Epidemiologist II directly to the complainant. The complainant testified, and the respondent did not rebut the assertion, that Vincent Sacco said "he was tired of people going out on maternity — going out on maternity and not coming back.". . . . Based on the events in Vincent Sacco's unit since his becoming Immunization Program Supervisor at the Department of Public Health, it would be consistent with his experience to utter such a statement
 It is not acceptable . . . or legal, to refuse to promote or provide training to someone on the basis that she may become pregnant in the future.[4]
(ROR, Volume 1, Item 1, pp. 15-16.)
Based on the above facts, the human rights referee certainly could draw the inference that the reason proffered by DPH for failing to promote Hodge did not represent the truth. O'Connor v. DePaul University,123 F.3d 665, 670 (7th Cir. 1997); Hasham v. Calfornia State Board ofEqualization, 200 F.3d 1035, 1045 (7th Cir. 2000) (pretext found because of substantial credibility issues in decision not to promote).
Since the finding of pretext is supported by substantial evidence, the court may defer to the human rights referee's conclusion[5] that Hodge met her burden of proof that there was racial and gender discrimination. CT Page 4932 "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., supra,120 S.Ct. 2109.
The court also agrees with the human rights referee's finding that "had the complainant been given the opportunity to apply and be considered for promotion to the position of Epidemiologist II, she would have been chosen because she was qualified and met a stated affirmative action goal for the agency at that time." (ROR, Volume 1, Item 1, p. 18.) DPH argues that it presented evidence that the affirmative action goals for 1996 included a white female. The human rights referee relied upon an affirmative action plan of DPH dating from July 1995 that indicated a goal of black and Hispanic persons and did not include a white female. (ROR Volume 5, item 86, p. 380.) There is also in the file a justification for Quigley at the time of her selection as the provisional appointee; this procedure is required where there is an existing "goal candidate"and the employer intends to make a selection outside "goal candidates." (ROR, Volume 5, Item 84, p. 382.) This supports the human rights referee's conclusion that at the challenged period (April 1996), DPH would have chosen Hodge, had she been allowed to apply.
On a finding of discrimination, the human rights referee had the authority to order remedies under General Statutes § 46a-86 (a) to restore Hodge to her "rightful place in the employment scheme. . . ."State v. CHRO, 211 Conn. 464, 478 (1989).
Therefore, the appeal is dismissed.
Henry S. Cohn, Judge