**Sunil PARIKH, Plaintiff,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

**No.  06 CV 3401(NG)(KAM).**

United States District Court, E.D. New York.

Feb. 2, 2010.

Gregory G. Smith, Gregory Smith & Associates, New York, NY, for Plaintiff.

Francine E. Menaker, New York City Transit Authority, Brooklyn, NY, for Defendant.

*OPINION AND ORDER*

GERSHON, District Judge:

Plaintiff Sunil Parikh brings this action against defendant New York City Transit Authority ("NYCTA") pursuant to 42 U.S.C. §§ 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), alleging discrimination on the basis of race and national origin and retaliation, and 29 U.S.C.

§§ 621 *et seq.* (the Age Discrimination in Employment Act). He also brings state law claims for intentional and negligent infliction of emotional distress and breach of contract. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant moves for summary judgment on all claims.

## FACTS [1]

The facts below are undisputed except where otherwise noted. Plaintiff self-identified on the NYCTA's personnel forms as an Asian; he is an American of Indian descent and was born in India. Plaintiff began work for the NYCTA as an assistant civil engineer in 1986. Among his other professional qualifications, plaintiff holds a Professional Engineering ("PE") license. Plaintiff received promotions in 1988, 1990, 1993, 1994, 1996, and 1997, finally becoming a Project Engineer. In or around 2003, the Environmental Engineering Division in which he worked was reorganized. Plaintiff was moved to one of two construction units in a group now known as the Hazardous Materials Remediation Group, in a new division, On–Call Projects ("OCP"). OCP is concerned primarily with the abatement of hazardous materials, and each construction unit is managed by its own unit head. After the reorganization, plaintiff reported to the same supervisor he had before the reorganization, the CM of his unit, Mr. Thomas Abdallah, whose race and national origin has not been identified, but Mr. Abdallah began reporting to Mr. Meyer Stender, who is white. Plaintiff frequently filled in for Mr. Abdallah when Mr. Abdallah was away from the office.

In May 2003, the head of the other construction unit in OCP retired. Mr. Stender named Mr. Joseph Dinaram, a man of Indian descent born in Guyana (also self-identified as "Asian" to the NYCTA), as acting Construction Manager (CM) of that unit.[2] Mr. Stender then arranged to have the permanent position as unit head advertised at both the CM and Construction Administrator ("CA") levels. The CA title was introduced relatively recently at the NYCTA, and there are a number of CAs working in various hazardous-material positions there. Defendant claims that in plaintiff's division, there is no significant difference in the type of work performed by a CA or a CM. However, because the NYCTA values the possession of professional licenses, individuals with PE licenses are ordinarily hired as CMs, who have a higher salary range and official ranking. Individuals who lack engineering licenses cannot be CMs, but rather must be hired with the title of CA. Plaintiff disputes the claim that there is no significant difference in job responsibilities in this particular context, but offers only evidence that there is work a CM *could* do that a CA could not (which, since the CM possesses a significant professional license, is doubtless true), not that CMs are routinely called on to perform different work.

Plaintiff and others applied for the permanent position. Mr. Stender and Mr. James Wincek, the white male head of NYCTA's Office of System Safety, which works closely with and oversees the Hazardous Remediation Group, conducted interviews with candidates. It is common NYCTA practice to conduct team job interviews. In May 2004, Mr. Dinaram was

---

1. Defendant asserts that plaintiff has structured his statement pursuant to Local Rule 56.1 in a way that violates that rule and has requested that, as a result, pursuant to Rule 56.1(c), I treat certain facts as admitted by plaintiff. Although plaintiff's Rule 56.1 state-

ment is not a model of clarity, it does not merit this sanction.

2. Because Mr. Dinaram did not possess a PE license, his title was later changed to "Acting Manager."

named permanent CA of the unit. Plaintiff complained both to Mr. Stender and to Ms. Cosema Crawford, a senior vice president and chief engineer at the NYCTA, that he should have been awarded the position rather than Mr. Dinaram because his qualifications were superior. Plaintiff claims that Mr. Stender and Ms. Crawford assured him separately that he was a good worker and would receive a promotion soon; Mr. Stender and Ms. Crawford deny this.

In or around November 2004, Mr. Abdallah was promoted to a higher position, Chief Environmental Engineer. Plaintiff claims that Mr. Abdallah warned him at the time that Mr. Stender was seeking to fill the position Mr. Abdallah was vacating with a less-experienced employee.[3] In response, plaintiff went to Mr. Stender to put his case for being promoted to that position. Mr. Stender ultimately named Mr. Parikh Acting CM of his own unit. The parties vigorously dispute the quality of Mr. Parikh's performance as Acting CM. Defendant claims that plaintiff had difficulty maintaining detailed oversight of some of the projects under his control, reacting quickly in emergency situations, and providing adequate reports to his superiors. Plaintiff contends that any problems during his tenure as Acting CM were systemic rather than the result of his own management and that he actually performed well in the position.

In spring of 2005, plaintiff received two evaluations for his performance in 2004, one from each of his supervisors for that year (that is, Mr. Abdallah and Mr. Stender). Mr. Abdallah, who had supervised him for most of the year, gave plaintiff an overall rating of "G" (for "good," the second highest ranking), with a mixture of "G"s and "E"s (E standing for "excellent,"

the highest ranking) in the individual subratings. Mr. Stender, on the other hand, gave plaintiff an overall rating of "G", but gave him all "G"s in the individual subratings.

Mr. Stender advertised the permanent position as construction unit head, first as a CA in August 2005, then as either a CM or a CA position. Again, plaintiff along with several others applied for this position. Human resources personnel transmitted to Mr. Stender the resumes of applicants who met the minimum requirements for the position. Mr. Stender and Mr. Wincek then interviewed the candidates. During the interviews, all candidates except plaintiff were asked how they would approach supervising an individual who had previously held the position, an obvious reference to plaintiff, who was then acting CM. Mr. Stender and Mr. Wincek separately graded each candidate with a numerical score in a number of categories. According to Mr. Wincek, he was not responsible for determining whether a candidate met the official requirements listed in the job posting. In fact, all the candidates had been screened by human resources and met those requirements. Mr. Wincek based his scores solely on the candidate's resume and performance in the interview. In contrast, Mr. Stender took into account his prior experience with the candidates, among other things.

Six candidates were interviewed for the position. Three of them, including plaintiff and one of the white male candidates, held PE licenses. Mr. Brian McLean, a white man of unspecified national origin, was separately rated the best candidate by both Mr. Stender and Mr. Wincek, with a score of 25 out of 25 points. Of the re-

---

**3.** Although plaintiff deposed Mr. Abdallah, he did not attempt to elicit testimony concerning this conversation.

maining candidates, a white man of unspecified national origin was ranked second, with 23 points; a man of Indian origin and a white man of unspecified national origin were tied for third, with 22 points; plaintiff was ranked fifth, with 17 points; and another man of Indian origin was ranked last, with 8 points.

Mr. McLean has a master's degree in environmental and occupational safety and health. He began working for the NYCTA in 1997 as an asbestos specialist. At the time he applied for the position of CA in 2005, he was working as a project administrator supervising asbestos abatement. He does not hold a PE license, but does hold all the formal qualifications required for the position of CA; in addition, he is a Certified Industrial Hygienist, a qualification which relates to worker safety. Mr. Stender ultimately selected Mr. McLean for the job with the title of CA, some time before December 23, 2005.

On or about December 23, 2005, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "discrimination charge"), claiming that the failure to promote him to the position as construction head of his own unit in 2005 was discriminatory.[4] Plaintiff's counsel notified defendant of the discrimination charge shortly thereafter. In early 2006, Mr. Stender again evaluated plaintiff's performance as acting CM as an overall "G" (the "2006 evaluation"). However, in some categories, he gave plaintiff a grade of "M" ("marginal," the third ranking), which he had not done in the previous year. Mr. Stender has testified, and noted on the evaluation at the time, that the lower grades resulted from his assessment of plaintiff's performance as Acting CM, although evaluated according to the performance expected of a Project Engineer filling the role temporarily. Plaintiff vigorously denies that he deserved the "M" grades in any case, but argues that Mr. Stender was actually reviewing him as though he were a permanent CM, thereby holding him to an unfairly high standard. It is undisputed that official NYCTA policy states that an employee who is only "acting" in a certain position should not be reviewed as though he actually held the position, but only to the standards of his actual position. Plaintiff later amended his discrimination charge to allege that the 2006 evaluation was retaliatory.

Plaintiff has since applied for at least one other job in the NYCTA, as a CM in 2007; it is undisputed that he was not selected for the position. Plaintiff alleges that he was told by an unnamed member of the hiring committee for this job that the marginal grades had some influence in the committee's decision. Defendant denies that such a statement was ever made.[5] The EEOC reviewed plaintiff's charge and found no evidence of discrimination in April 18, 2006. It issued plaintiff a right-to-sue letter. Plaintiff then brought this suit on July 12, 2006.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

4. Plaintiff has not alleged that the promotion of Mr. Dinaram instead of him in 2004 was discriminatory.

5. At oral argument, Mr. Parikh identified his alleged informant, albeit not under oath, and that individual does work for the NYCTA. Although this statement is thus not hearsay as defendant argues, see Fed.R.Evid. 801(d)(2)(D), every member of that hiring committee has submitted an affidavit denying that he or she made that statement.

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed.R.Civ.P. 56(c).[6] A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), but "must come forward with specific facts showing that there is a genuine issue for trial," *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348 (emphasis removed).

When intent is at issue, district courts must use caution resolving motions for summary judgment in discrimination cases since "[a] victim of discrimination is ... seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991). However, "[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise

valid motion." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). "It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001). Therefore, summary judgment remains appropriate where the standards of Rule 56 have been met. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000).

## II. Plaintiff's Claims of Discrimination on the Basis of Race and/or National Origin (Title VII)

Defendant moves for summary judgment on plaintiff's claim of racial and/or national origin discrimination, arguing that plaintiff has not established a *prima facie* case of discrimination and that, even if he had, he cannot demonstrate that defendant's nondiscriminatory reasons for its adverse employment actions are pretextual. Plaintiff clarified on oral argument that his allegation is of discrimination against him on the basis of his national origin (Indian) rather than his race; thus, he did not consider Mr. Dinaram, a Guyanese national though of Indian descent (according to plaintiff) to be in the same protected class.[7]

Title VII makes it unlawful for employers "to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2 (2010). Discrimination claims under Title VII are analyzed under the long-established

---

**6.** On December 1, 2009, amendments to the language of Rule 56(c) which are not material to the disposition of this motion went into effect.

**7.** Plaintiff does not make a statistical argument as to pervasive bias at the NYCTA against persons of Indian national origin. Although defendant has provided significant demographic information concerning patterns of hiring and promotion in the NYCTA and plaintiff's division, it does not actually make a statistical argument, either.

*McDonnell–Douglas* burden-shifting framework. "The plaintiff in such a case ... must first establish, by a preponderance of the evidence, a 'prima facie' case of racial discrimination.... [E]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). At that point, the defendant faces the "burden of producing an explanation to rebut the prima facie case—i.e., the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Center*, 509 U.S. at 506–07, 113 S.Ct. 2742 (internal citations omitted); *see also Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. If the defendant does so, then the plaintiff must establish "that the proffered reason was not the true reason for the employment decision, and that [a discriminatory motive] was"—that is, that the defendant's alleged motive is not merely a pretext, but a pretext for *discrimination*. *St. Mary's Honor Center*, 509 U.S. at 508, 113 S.Ct. 2742; *see also Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. At all times, of course, the ultimate burden of proof rests with the plaintiff.

■ The requirements for making out a plaintiff's prima facie case under the *McDonnell–Douglas* framework have been described as "de minimis." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998). To establish a prima facie case for failure to promote, a plaintiff must show: "(1) [he] is a member of a protected class; (2)[he] applied and was qualified for a job for which the employer was seeking applicants; (3)[he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications," *id.* at 709 (internal quotation omitted), or "the position was filled by someone not a member of plaintiff's protected class," *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997).

■ Defendant does not deny that plaintiff is a member of a protected class with respect to his national origin. Neither does defendant dispute that plaintiff was qualified for the position of Construction Manager (in the sense that he met the minimal requirements for the job), or that he was rejected for the position. Finally, defendant concedes that it hired someone for the position who was not of plaintiff's protected class (i.e., a white man of unspecified national origin). Thus, a prima facie case of discrimination has been made. For its part, defendant has offered legitimate, nondiscriminatory reasons for its failure to promote plaintiff. Defendant points to Mr. McLean's qualifications, the lack of a requirement for a PE license in the CA position, and Mr. Stender's concerns over plaintiff's performance as Acting CM to justify its choice of Mr. McLean over plaintiff.

Plaintiff then has the obligation to offer evidence from which a rational jury might infer that the NYCTA's proffered reasons for promoting Mr. McLean instead of plaintiff were actually a pretext for animus based on race or national origin. Contrary to plaintiff's claim, Mr. McLean did meet the qualifications for the job for which he was hired (that is, CA, *not*, as plaintiff suggests, CM). Although plaintiff possessed some qualifications that Mr. McLean did not, the converse is also true, and although defendant does not controvert plaintiff's claim that the NYCTA regards a PE license as a valuable qualification in this context, neither does plaintiff controvert defendant's claim that a Certified Industrial Hygienist certification demonstrates skills useful to the position. Mr.

McLean also outscored plaintiff in two separate evaluations of their interviews and resumes. In addition to Mr. Stender and Mr. Wincek, Mr. Abdallah, now chief environmental engineer at the NYCTA, who had supervised both plaintiff and Mr. McLean for some time, and on whose high opinion of plaintiff's work plaintiff repeatedly relies in demonstrating his own merit, testified that he thought Mr. McLean was qualified for the job and that he had the highest regard for Mr. McLean's skills and work ethic. In fact, Mr. Abdallah had previously indicated to Mr. McLean that he would like Mr. McLean to apply for a position as a CA in a new industrial hygiene subdivision that Mr. Abdallah was hoping to create. "[T]he court must respect the employer's unfettered discretion to choose among qualified candidates." *Byrnie v. Town of Cromwell,* 243 F.3d 93, 103 (2d Cir.2001).

Plaintiff argues that the dual advertising of the position (as CA and CM) is evidence of a scheme to allow a less-qualified candidate to be selected over him. The posting of the job as construction unit head as both CA and CM does appear to have been unusual for the NYCTA. Nonetheless, the NYCTA did not first advertise the position with more requirements and then later advertise the position with fewer requirements in order to "eliminate . . . [the plaintiff's] competitive advantage," as happened in *Bergene v. Salt River Project Agric. Imp. and Power Dist.,* 272 F.3d 1136, 1143 (2d Cir.2001), a sex-discrimination case on which plaintiff relies in making this argument. In that case, the defendant first posted a position which required that the candidate be qualified as a journeyman electrician, as the plaintiff, a woman, was, and then later revised the posting to eliminate that requirement and make it possible for the defendant to hire a man who lacked that qualification. The defendant also admitted to evaluating candidates on the basis of supervisory experience—a factor which favored the male candidate—even though that factor was not mentioned in the original job posting. *Id.* In this case, the NYCTA posted the position as CA first and only later posted it as CM as well. If anything, this was an invitation to better-qualified candidates to apply, since their additional qualifications would be rewarded with increased pay and status. The posting of the job at the CM level actually made the job *more,* not less, appropriate for plaintiff.

Plaintiff also challenges the scores that Mr. McLean received in his interview, but offers little but his incredulity that anyone could score so high as a reason to disbelieve them. Finally, that the other candidates were asked in their interviews how they would handle supervising a person who had previously held a similar position (i.e., plaintiff), something else of which plaintiff complains, does not suggest a hidden motive, as supervising plaintiff, who was then holding the acting position, would obviously be a challenge presented to any individual, regardless of his national origin, who was hired instead of plaintiff. Plaintiff has thus failed to offer evidence sufficient to support an inference of pretext on the NYCTA's part.

Nor has plaintiff introduced sufficient evidence to permit a jury to conclude that the NYCTA's true motive was discriminatory.[8] Plaintiff has offered no evidence of

---

8. Further, such evidence as is introduced by the defendant suggests the contrary. Mr. Stender promoted Mr. Dinaram, who self-identifies as Indian and Asian, to the first construction unit head job. He also made plaintiff Acting CM less than a year before giving the permanent job to Mr. McLean. The parties dispute whether these facts are sufficient to give rise to a "same actor inference" in favor of defendant, but I do not consider it necessary to reach the question of whether defendant is entitled to a formal in-

prejudice on the part of any of his supervisors based on his national origin.[9] His entire argument instead turns on the superiority of his qualifications to those of Mr. McLean. It is true that plaintiffs are not *required* to offer direct evidence of bias, which can be difficult to find; it is theoretically possible to establish a discriminatory motive based on sufficiently persuasive evidence of pretext alone. *St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742. However,

> [w]hen a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the

person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'

*Byrnie*, 243 F.3d at 103.

That showing cannot be made here. Plaintiff argues at length that a construction unit head in OCP with a PE license could do such a better job than one without a PE license that it would be unreasonable to hire for the position at the level of CA rather than CM, an argument defendant contests. However, plaintiff offers no evidence from which a rational jury could infer that internal or regulatory standards *mandate* that a construction unit head in OCP hold a PE license for the type of work typically performed in that position.[10] Further, no rational jury could believe that it was unreasonable for the NYCTA to have hired the well-qualified Mr. McLean instead of plaintiff, who was also qualified

---

ference to take these facts into account when considering what a rational jury could infer.

9. Plaintiff has attempted to introduce evidence regarding Mr. Stender's supposed demotion at the behest of a supervisor of Indian descent several years earlier. However, plaintiff's affidavit introducing this evidence violates Rule 56, which directs that affidavits offered in relation to a motion for summary judgment "must be made on personal knowledge ... and show that the affiant is competent to testify on the matters stated." Fed. R.Civ.P. 56(e)(1). Plaintiff's affidavit makes his assertions on this subject only "upon information and belief," with no further evidentiary support or offered basis for the plaintiff's competence to testify on this point. "[Rule 56's] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir.2004). I thus disregard plaintiff's proffered evidence on this point.

10. While plaintiff formally denies defendant's proffered statement of material fact that "[t]he job responsibilities of the construction

unit heads in the Hazardous Remediation Group do not require a PE license," Def.'s Rule 56.1 Statement of Material Facts ¶ 30, he supports his denial by citation to, among other evidence, deposition testimony by Ms. Crawford that "[t]he 'position' [of construction unit head] required some one with the qualifications of a CA or above. A CM would also meet the requirements." Pl.'s Rule 56.1 Statement of Material Facts ¶ 30, 21. As a CA is not required to hold a PE license, this testimony contradicts, rather than supports, plaintiff's claim. None of the other evidence plaintiff cites directly controverts defendant's claim.

Similarly, while plaintiff formally controverts defendant's statement that "The DOL does not require a PE license for hazardous waste abatement projects such as the ones handled by Mr. Levinn's and Mr. Abdallah's groups," Def.'s Rule 56.1 Statement ¶ 32, with the statement "the TA does require a PE license for this kind of work," Pl.'s Rule 56.1 Statement ¶ 32, none of the evidence plaintiff cites actually supports plaintiff's claim. At best, it supports the undisputed fact that a number of those who have done this work possessed PE licenses.

but whose supervisor believed that he had struggled when serving temporarily in the position. In short, the parties differ as to their assessments of the proper requirements for the construction unit head position as well as Mr. Parikh's performance as an acting CM, but, absent improper motive, defendant is entitled to make its own determinations on these points. Plaintiff is doubtless passionately convinced of his superiority to Mr. McLean and his entitlement to the position as CM, but this subjective belief is not an adequate basis for a claim of discrimination under Title VII.

Summary judgment is thus granted to defendant on plaintiff's Title VII claims with respect to race and national origin.

### III. Plaintiff's Claims of Age Discrimination (ADEA)

Defendant also moves for summary judgment on plaintiff's age discrimination claim, again arguing that plaintiff has not made a prima facie case or, if he has, has failed to offer evidence sufficient to demonstrate that defendant's proffered reasons for failing to promote him are a pretext for discrimination.

At oral argument, plaintiff abandoned his age discrimination claim. Summary judgment is thus granted to defendant on plaintiff's ADEA claim.

### IV. Plaintiff's Retaliation Claim

Defendant moves for summary judgment on plaintiff's claim of retaliation, arguing that plaintiff has not established a prima facie case of retaliation and in any case has not demonstrated that defendant's allegedly nondiscriminatory reasons for its adverse employment actions are pretextual.

In addition to prohibiting certain forms of discrimination, Title VII also prohibits retaliation by employers against workers for their opposition to employ-ment discrimination. Title VII retaliation claims are analyzed under the *McDonnell–Douglas* framework discussed above. *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208–09 (2d Cir.1990); *Cody v. County of Nassau*, 577 F.Supp.2d 623, 644 (E.D.N.Y.2008). To make a prima facie case for retaliation, a plaintiff must demonstrate "that he engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Sumner*, 899 F.2d at 208; *Cody*, 577 F.Supp.2d at 644. In the retaliation context, an "adverse action" need only be an action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

Defendant concedes that plaintiff engaged in protected activity (the complaint to the EEOC) of which it was aware. The short time period between the protected activity and the negative evaluation also provides sufficient evidence that a jury might find causation. However, defendant denies that plaintiff's evaluation for 2005, which included "M" subratings but provided an overall "G" rating, constituted an adverse action. Even before *Burlington Northern*, the Second Circuit had held that a negative performance evaluation "may constitute adverse employment action in certain circumstances," at least. *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir.2004); *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir.2002). The Second Circuit has not revisited this issue since *Burlington Northern* was decided to provide guidance as to which circumstances are now sufficient.

Meanwhile, there have been some recent district court decisions holding that a negative performance evaluation, by itself, is not an adverse employment action. E.g., *Alywahby v. Shinseki,* 2009 WL 5166271 at *6 (E.D.N.Y. Dec. 29, 2009); *Dixon v. City of New York,* 2008 WL 4453201 at *16 (E.D.N.Y. Sept. 30, 2008). Notably, in *Alywahby,* the plaintiff complained of a "satisfactory" rating and, in *Dixon,* of a rating of four out of five. Neither complained of a subpar or marginal rating. And, in a recent case, *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir.2010), the Second Circuit criticized as "applying pre-*White* law" a district court's holding that "negative evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotions, wages, or termination...."

■ I find that, in this case, there is an issue of fact as to whether plaintiff's negative performance evaluation meets the *Burlington Northern* standard. Even discounting plaintiff's evidence concerning the 2007 position for which he was not hired, whether a professional in mid-career, attempting to establish a record of good performance in order to obtain a higher position, would be deterred from engaging in protected activity by the receipt of marginal ratings in his permanent record is a question that should be answered by the jury.

However, plaintiff's contentions that Mr. Stender's solicitation of information concerning plaintiff's job performance from his supervisor (Mr. McLean) and the NYCTA's consultation with a lawyer constitute adverse employment actions are meritless. A reasonable worker would not be deterred from making a discrimination complaint by an employer's seeking legal counsel or gathering facts appropriate to

evaluation of his complaint. Government officials need not "behave with a litigation adversary exactly as they would if the person were not a litigation adversary. There are many precautions prudently taken with a litigation adversary.... The mere fact that a government official takes such reasonable precautions, notwithstanding that the official would not have taken them if the counterparty had not been a litigation adversary, does not make such actions unconstitutional retaliation...." *Tuccio v. Marconi,* 589 F.3d 538, 541 (2d Cir.2009).[11]

Defendant is therefore denied summary judgment on plaintiff's retaliation claim.

## V. Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress

Defendant moves for summary judgment on plaintiff's claims for intentional and negligent infliction of emotional distress, arguing that plaintiff failed to serve a timely notice of claim on the NYCTA.

■ N.Y. Public Authorities Law § 1212(2) (McKinney 2010) states: "Except in an action for wrongful death, an action against the authority founded on tort shall not be commenced ... unless a notice of claim shall have been served on the authority within the time limited, and in compliance with all the requirements of section fifty-e of the general municipal law." N.Y. General Municipal Law § 50–e(1) (McKinney 2010) requires that "[i]n any case founded upon tort where a notice of claim is required by law ... the notice of claim shall ... be served ... within ninety days after the claim arises ..." Any such notice of claim "shall be in writing, sworn to by or on behalf of the claimant, and shall set forth: (1) the name and post-office address of each claimant, and of his

---

11. Whether the facts relating to these issues will be admissible at trial on the viable claim of retaliation is a matter for another day.

attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained...." N.Y. General Municipal Law § 50–e(2). If there is no timely filing of a notice of claim, the court must dismiss the case. *Adams v. New York City Transit Auth.*, 140 A.D.2d 572, 572–73, 528 N.Y.S.2d 638 (2d Dep't 1988). In addition, the court lacks the power to grant a plaintiff permission to file a notice of claim after the statute of limitations has expired, as it has in this case. *Pierson v. City of New York*, 56 N.Y.2d 950, 954–55, 453 N.Y.S.2d 615, 439 N.E.2d 331 (1982).

Defendant asserts, and plaintiff does not deny, that plaintiff served no separate notice of claim on the NYCTA for the torts of intentional and negligent infliction of emotional distress. Instead, plaintiff claims that his discrimination charge was sufficient to satisfy the statutory requirement. Plaintiff has offered no authority for the proposition that a charge of discrimination filed with the EEOC meets the statutory requirements of Section 1212. Further, plaintiff's discrimination charge makes no mention of claims for intentional or negligent infliction of emotional distress and thus clearly does not specify "the nature of the claim," as required by Section 1212. Plaintiff has thus failed to serve a timely notice of claim on the NYCTA.

Summary judgment is therefore granted to defendant on plaintiff's claims for intentional and negligent infliction of emotional distress.

## VI. Plaintiff's Claim for Breach of Contract

Defendant moves for summary judgment on plaintiff's claim for breach of contract, arguing that plaintiff never made this claim (or produced the alleged contract) until the filing of his papers in opposition to defendant's motion for summary judgment.

Plaintiff's sole reference to his breach of contract claim in his complaint, which he never sought leave to amend, reads: "By failing to follow its own personnel policies and procedures on evaluating and providing equal employment opportunity to its employees, Defendant has breached its contractual obligations to Plaintiff." Compl. ¶ 27. This must be read as a claim that defendant was subject to a contractual obligation to follow its established equal-opportunity policies. However, in plaintiff's opposition to defendant's motion for summary judgment, plaintiff makes a claim for breach of contract on an entirely different ground, arguing that, by failing to keep plaintiff in the Environmental Engineering Division and not requiring him to report to the chief engineer after 2003, defendant breached the "contract" allegedly created by a letter from defendant notifying plaintiff of a promotion.

■ "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial...." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Even read most liberally—and plaintiff is not *pro se*—plaintiff's statement of his breach of contract claim in his complaint failed to give adequate notice to defendant of the claim he now raises. Plaintiff does not claim that his movement out of the EED was prompted by discrimination on the basis of race, national origin, or age (as might violate defendant's policies).[12] Plaintiff offers no other explana-

---

**12.** Plaintiff does not even allege that this reorganization was effectively a demotion or even that it negatively affected his responsibilities, compensation, or even conditions of employment—except to the extent that he alleges that

tion of how his involvement in a departmental reorganization could constitute a "fail[ure] to follow [defendant's] own personnel policies and procedures on evaluating and providing equal employment opportunities to its employees." Thus, the actions which might give rise to liability under the claim as stated in the complaint and the actions which might give rise to liability under the claim as now articulated are entirely different. Plaintiff is thus impermissibly attempting to argue a claim not stated in his complaint, regarding which the defendant has had no opportunity to develop evidence, in discovery or otherwise. Since plaintiff has offered no opposition to defendant's motion for summary judgment on the claim for breach of contract as originally stated in his complaint, that claim is deemed abandoned.

Summary judgment for defendant on plaintiff's breach of contract claim is therefore granted.

## CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment is granted, except with respect to plaintiff's claim of retaliation under Title VII, as to which the motion is denied.[13]

**SO ORDERED.**

---

he no longer has an engineer as a superior to guide him in his professional development.

13. Plaintiff's motion to strike defendant's reply papers is also denied. Defendant's brief delay caused no prejudice.